# Prattville Cotton Mills Co. *v.* McKinney.

*Damage for Injury to Servant.*

(Decided May 16, 1912. Rehearing denied June 29, 1912.
59 South. 498.)

1. *Appeal and Error; Record; Questions Presented.*—Where the record shows the filing of demurrers to the counts of the complaint, but fails to show any ruling or judgment thereon, the court on appeal cannot pass upon the sufficiency of the counts, and must treat them as not having been demurred to.

2. *Same; Presumption.*—All reasonable intendments are indulged in favor of the ruling of the trial court on appeal.

[Prattville Cotton Mills Co. v. McKinney.]

3. *Master and Servant; Injury to Servant; Jury Question.*—The evidence in this case examined and held sufficient to require a submission to the jury of the question of the master's liability, and the contributory negligence and assumption of risk of the servant.

4. *Same; Defective Appliance; Guarding Machinery.*—It cannot be asserted as a matter of law that a master is not liable for injury to a servant caused by a protruding set screw on a revolving shaft.

5. *Same; Assumption of Risk.*—Whether or not a servant assumes the risk where his superior commands him to go on with his work, is a question of fact depending on the degree of danger and the extent of the servant's understanding of such danger.

6. *Same; Safe Appliances.*—While a master is not required to furnish the best possible appliances he cannot escape liability by showing that appliances similar to those used by him are used by prudent persons engaged in the same business.

7. *Same; Evidence.*—Where the action was for injury to a servant by a protruding set screw on a revolving shaft, it was proper to allow the servant to testify as to his knowledge of the dangerous character of the machinery which injured him.

8. *Same.*—A servant may show that the accident in which he was injured was the first one that has happened to the machine as such testimony tends to show the servant's lack of knowledge of the danger, and is not injurious to the master.

9. *Same; Contributory Negligence.*—Unless it contributed to the injury a servant's negligence will not bar his recovery for such injury.

10. *Witnesses; Examination; Leading Question.*—It is ordinarily within the discretion of the trial court to permit or to exclude leading questions.

11. *Charge of Court; Confusing or Misleading.*—Where the evidence was conflicting as to whether a servant had been warned of the danger of a protruding set screw on a revolving shaft, and as to whether he had been ordered to clean the machinery while in motion, a charge asserting that although the jury might believe that the master was guilty of negligence in failing to instruct the servant, yet if he was only instructed to clean the machinery without being instructed to clean it while in motion, and he attempted to clean it while in motion, and was thereby injured, when he could have waited until it stopped, judgment should be for defendant is properly refused as confusing and misleading.

12. *Same; Assumption of Law.*—A charge assuming as a matter of law that it was dangerous to clean machinery while in motion was improper.

13. *Same; Assuming Facts.*—Charges assuming as true that which is disputed, and that there was no evidence of disputed facts, are improper.

14. *Same; Applicability to Pleading.*—Charges tending to limit the recovery to part only of the counts in the complaint, are properly refused.

15. *Same; Applicability to Evidence.*—Charges are properly refused which ignore issues raised by the evidence.

APPEAL from Autauga Circuit Court.

Heard before Hon. W. W. PEARSON.

Action by Henry McKinney, pro ami, against the Prattville Cotton Mill Company for damages for personal injuries suffered while in defendant's employ. Judgment for plaintiff, and defendant appeals. Affirmed.

The following charges were refused to the defendant: A. "Although the jury may believe from the evidence that the defendant was guilty of negligence by failing to instruct the plaintiff in detail as to the danger of cleaning off the shafting or machinery under his charge, and in his care, while the same was in motion and the shaft was revolving at great speed, yet if the defendant was only instructed to clean the machinery and shafting without being instructed to clean the same while it was in motion, or being operated, and he attempted to clean same, or wipe off the shafting with loose waste or quantity of thread constituting this, while the same was in motion, and the shaft revolving at great speed, and by so doing got his hand caught, and thereby sustained the injury complained of, when he could have waited until the machinery stopped, or until after the mill was shut down before attempting to clean off the shafting or machinery in discharging the duties of his employment, then the jury must find for the defendant." B. "The court charges the jury that the plaintiff was not instructed to wipe off the shaft or machinery under his charge while such machinery was running or being operated and shaft revolving at great speed." I. "The evidence fails to show that either the defendant or any employee of the defendant, who had authority to do so, instructed the plaintiff to clean off the revolving shaft on which the set screw was fastened while revolving or in motion." J. The same as I,

with the addition: "And it also fails to show that the plaintiff did not know that it was dangerous to attempt to clean said shaft while revolving rapidly." K. "There is no evidence in this case that it was any part of the duty of the plaintiff to attempt to clean the shaft on which the set screw was fastened while the same was in motion." E. "The court charges the jury that if they believe from the evidence the plaintiff had open to him, in discharging the duty or rendering the service which he owed to the defendant, the privilege of waiting until the mill was shut down, or machinery was stopped, and it would have been safe and free of danger in cleaning off said machinery or shafting when stopped, and that the plaintiff instead of waiting until the machinery was stopped, or mill shut down, attempted to wipe off said machinery or shaft with loose waste while the machinery or shaft was revolving at a great speed, and by so doing got his hand or arm caught, and thereby sustained injuries complained of, the verdict of the jury should be for the defendant." G. "I charge you, gentlemen of the jury, that the evidence failed to show any defects in the condition, ways, works, machinery, or plant of the defendant." L. "There is no evidence in this case that it was any part of the duty of the plaintiff to attempt to clean the shaft on which the set screw was fastened while the same was in motion, and if from the evidence the jury believe that the plaintiff attempted to clean the shaft on which the set screw was fastened with waste while the same was in motion and rapidly revolving, and thereby sustained injury complained of, you should find for the defendant." M. "If you believe from the evidence that there was a defect in the condition of the ways, works, machinery, or plant of the defendant, you cannot find for the plaintiff, unless you further believe from the evidence that such defect prox-

imately contributed to the injury complained of." O. "I charge you that if you believe from the evidence that there were two ways or methods known to the plaintiff for performing his duties as an employee of the defendant, in cleaning the shaft on which the set screws was, one know to be more dangerous than the other, and that plaintiff chose the more dangerous way of cleaning same, then you should find for the defendant." P. "I charge you that if there were two ways in which the plaintiff might discharge his work for the defendant, from the evidence in this case, and that he elected the more dangerous way, then he cannot recover a verdict against the defendant in this case." T. "If the jury are reasonably satisfied from the evidence that a person of ordinary intelligence would have known that it was dangerous to have attempted to wipe off the piece of shafting on which the set screw was fastened, and the plaintiff did attempt to wipe off or clean said piece of shafting while revolving at high rate of speed, he was guilty of contributory negligence, and cannot recover in this case if the injury was inflicted as a proximate cause or result of attempting to clean off or wipe off said shaft while so revolving."

R. L. HARMON, EUGENE BALLARD, and J. MANLEY FOSTER, for appellant. Plaintiff failed to prove his case as alleged in the complaint, and pleas 1 and 2 were each good defenses, for although there may be a safer kind of set screw, the master owes the servant no duty to box the pulley or shaft or to change the set screw. *Rooney v. S. & D. Cordage Co.*, 36 N. E. 368; *Donahue v. Washburn M. Co.*, 48 N. E. 482. Where the danger is patent no duty rests on the master to warn of the danger. —*Worthington v. Goforth*, 124 Ala. 656. The mere statement of plaintiff that he did not know it was dangerous

cannot create an issue of fact.—*Richards v. Sloss-S. S. & I. Co.*, 146 Ala. 254; *Peters v. So. Ry.*, 135 Ala. 533; *Sloss-S. S. & I. Co. v. Knowles*, 129 Ala. 410. If the allegation of the complaint had corresponded with the evidence, it would not have stated a cause of action.— 34 N. E. 255. Plaintiff was guilty of contributory negligence proximately causing the injury in attempting to clean the shaft while it was revolving, as it was openly and visibly dangerous.—*Lowe M. Co. v. Payne*, 167 Ala. 245; 172 Mass. 544. 15 N. E. 576; 45 N. W. 474; 29 Pac. 207; 158 Mass, 228, and authorities supra. Defendant was entitled to the affirmative charge because it undisputedly appears that plaintiff assumed the risk. 61 C. C. 477, and authorities cited; 51 U. S. 74; 113 N. Y. 540; 110 Ind. 293; 38 N. W. 914; 35 N. E. 458; 122 U. S. 189; 147 U. S. 238; 152 U. S. 145; 4 Am. St. Rep. 307. The risk was so hazardous and obvious as not to require instruction or warning on the part of the employer.—*Brammer v. Pettyjohn*, 154 Ala. 616; *Moss v. Mosely*, 148 Ala. 86; 115 Ala. 389; Dresser's Emp. Liab. 96; *L. & N. v. Wilson*, 162 Ala. 558. Riley answered in response to the question what is a stranner or stranning machine, that it was a dangerous machine. The question and answer were both objected to by defendant, and the court erred in overruling it.—*L. & N. v. Bozeman*, 110 Ala. 185; *Lawrence v. Kaul L. Co.*, 55 South. 114; *Stravis v. Sloss-Sheffield*, 162 Ala. 605. The defendant was entitled to show that no accident had ever happened with this machine before, although it had been running for twenty-three years.—*Davis v. Kornman*, 141 Ala. 479. Counsel discuss charges refused but cite no further authority than those cited above.

HILL, HILL, WHITING & STERN, for appellee. Before the court can say that defendant was entitled to the

affirmative charge it must be prepared to say either that there was no evidence to support any count of the complaint, or that the evidence showed as a matter of law that plaintiff was guilty of contributory negligence or assumption of risk, that resulted in his injury. We insist that under the evidence in this case both were jury questions.—*Going v. Ala. S. & W. Co.*, 141 Ala. 534; 68 Mich. 305; 25 Ont. 12. It was recognized that such set screw was dangerous and had been discarded in well regulated shops, its continued use by defendant would itself constitute a defect.—*L. & N. v. Binion*, 107 Ala. 659; *L. & N. v. Jones*, 130 Ala. 473; *C. of Ga. v. Storrs*, 169 Ala. 361; 1 LeB. 110. There was ample evidence to support counts 4 and 6 of the complaint, and to authorize a recovery thereunder.— *King v. Woodstock I. Co.*, 143 Ala. 636. The same is true as to counts 7 and 8.—*Clements v. A. G. S.*, 127 Ala. 166; *Houston B. Co. v. Dial*, 135 Ala. 168; *So. Ry. v. McGowan*, 149 Ala. 450; *Chamberlain v. So. Ry.*, 159 Ala. 171. There was also ample evidence to support counts 9 and 10. It must follow then that plaintiff was entitled to recover unless he was guilty of proximate contributory negligence or assumption of risk, which, under the evidence, we insist, was a question to be determined by the jury, and which could not be asserted as a matter of law.—*Wes. S. Co. v. Bean*, 163 Ala. 263; *So. Ry. v. McGowan, supra; Grasselli C. Co. v. Davis*, 52 South. 35; *Tallassee F. M. Co. v. Moore*, 158 Ala. 368; *L. & N. v. Baker*, 106 Ala. 631; *West Pratt v. Andrews*, 150 Ala. 368. As to the assumption of risk, see *So. Ry. v. Howell*, 135 Ala. 649; *Bridges v. Tenn. C. Co.*, 163 Ala. 239; *S. L. & S. F. v. Brantley*, 53 South. 308. There was no error in the admission of evidence.—*St. L. v. Brantley, supra; Woodstock I. Co. v. Klein*, 149 Ala. 399; *Bailey v. State*, 107 Ala. 153.

[Pra'ttville Cotton Mills Co. v. McKinney.]

The foregoing discussions and citations of authority demonstrates that the court was not in error in refusing the charges requested.

MAYFIELD, J.—This action is brought by a servant against the master to recover damages for personal injuries alleged to have been proximately caused by the negligence of the master, or of its servants or agents, for which the law holds the master liable.

The complaint originally contained 13 counts, but it was tried upon counts 1, 2, 4, 6, 7, 8, 9, and 10.

Counts 1 and 2 were under the first subdivision of the Employer's Liability Act (Code 1907, § 3910), as for defects in the ways, works, machinery, etc. Counts 4 and 6 were under the second subdivision, as for the negligence of a servant intrusted with superintendence, while in the exercise of such superintendence. Counts 7 and 8 were based upon the common-law duty of the master to use reasonable diligence and care to furnish the servant a safe place in which to work, and safe appliances with which to work, and to exercise care to maintain the same in a safe condition and in repair. Counts 9 and 10 were for failure to warn the servant, who was alleged to be inexperienced, of the dangers attending the performance of the duties assigned to plaintiff.

To these various counts the defendant demurred, but the record fails to show any judgment or order or ruling on the demurrer. Therefore we cannot pass upon the sufficiency of the counts, and all must be treated as if not demurred to.

To these counts the defendant pleaded the general issue, contributory negligence, and assumption of risk. There were many of these pleas. A demurrer to all the special pleas was interposed, but the judgment entry

shows no ruling thereon. Moreover, the record proper is in bad condition.

We are therefore required to guess or to presume the issues upon which the case was actually tried, and all intendments must be indulged in favor of the rulings of the trial court on the demurrers to the complaint and to the special pleas.

The plaintiff is a minor, between 15 and 16 years of age. The defendant is a corporation engaged in the operation of a cotton mill in this state. The plaintiff was employed by the defendant, in its business, and at the time of the injury was engaged in the particular business of stranner, and worked at a stranning machine, which is a part of the machine for making cotton rope. At the time of his injury he had been working at this particular machine only a few days, less than a week, though he had been employed in the mill for several years at other and less dangerous work. The stranning machine at which plaintiff worked had connected with it a line of steel shafting, about 14 feet long, on which revolved pulleys with belts for running the machinery. This section of shafting had an iron band or collar around it, through which passed a set screw, for holding the pulleys in position. This screw was about three-eighths of an inch in diameter, with a square head about one-half inch in size, and projected above the collar about three-eighths of an inch. This machinery was required to be cleaned by the employee who operated it, on Saturday. It was stopped at 2:15 p. m., on Saturday, and the mill was closed at 3 p. m., on that day. This was arranged and intended to allow 45 minutes in which to clean up the machinery, sweep the building, etc., before the operatives should leave for the week.

[Prattville Cotton Mills Co. v. McKinney.]

This stranning machine which the plaintiff operated had this shaft above referred to, which revolved very rapidly, making 400 or 500 revolutions per minute. Plaintiff was attempting to clean the machine while it was in operation, by wiping with waste threads or yarn which was wrapped around his hands; and this thread or waste caught upon the head of the set screw, and thus drew his hand around the shafting, tearing off a part of his hand and arm.

The plaintiff claims that he did not know of the presence of this set screw and its projecting head, which caught the yarn and thus drew his hand around the pulley and inflicted the injury complained of.

Under the present state of this record, it appears that this case may have been tried upon a hundred or more issues, and, except as the evidence may show it, it is impossible to know which were abandoned, and which were the most relied upon for recovery, or for defense. Our investigation of the record is therefore rendered more difficult and uncertain. It is stated by counsel—and the record seems to bear out the statement—that the main issues relied on for a recovery by the plaintiff were a defect in the machinery in the kind of set screw used, and defendant's failure to warn plaintiff of the danger of wiping or cleaning the machinery while it was in motion.

The main grounds of defense seem to be contributory negligence and assumption of risk, in that the danger was an ordinary one, patent and obvious, and that the plaintiff was in need of no instructions as to this particular danger. There is unquestionably evidence in this record to support each of the issues, specially mentioned above, relied upon by the plaintiff to make out his case; and there is likewise evidence to the contrary. There is evidence which, if believed, would

authorize the jury to infer that the danger was not obvious, and that plaintiff was not aware of it, if others were, and that he was instructed to clean the machine while in motion. It is true that there is no evidence of any express or explicit instruction to clean the machine while in operation; but there was a direction given while it was in motion, and without specifying whether it should be done immediately, or be done after the mill was shut down. It is true that there is evidence of a custom or rule at the mill to clean the machinery only after it was stopped and before the mill was closed for the week—that is, after 2 :15 and before 3 p. m. But there is none that the plaintiff had been so instructed, or that he knew it was dangerous to clean the machinery in motion, though the jury might have inferred such conclusion. But there certainly could be no such conclusive presumption of such a state of facts as would take the question from the jury.

One witness (Walter Riley) testified in part as follows: "There is no danger to clean the machinery while it is running if the set screw was taken off; that there was no danger with the safety set screw, which is the same set screw that is screwed down with a screwdriver; that, if the set screw was taken off, there would be nothing to catch the waste."

One John Allen testified as follows: "That there were two ways by which a set screw could be placed on a piece of shafting when it was exposed and revolving. It could be fixed with the long set screw with the head sticking up, or with the set screw with a flat head which came down flush with the collar, which would cause no danger at all; that an open-ended set screw could be used flush with the collar; that in all well-regulated shops they used an open-ended set screw which comes, when it is tightened on the shafting, flush with

the collar; that the latter set screw, he thought, was used, as a rule, by up-to-date plants now; that this had been the rule for some time."

The plaintiff testified in part as follows: To the question, "Did you know there was a set screw on it?" he answered: "No, sir; I did not know it. I had never seen it at all. I did not discover it. The waste wrapped around my hand, and the waste got caught on the set screw. It was a long piece of shafting, about eight inches above the floor." The transcript also shows, among others, the following questions to and answers by plaintiff: "Q. Did all of the employees in there clean their machines while running? A. Yes, sir; they had to clean then, or clean them on their own time. Q. What do you mean about their own time? A. At dinner; at noon. I was hurt before dinner. Mr. George Walls was the head boss. He was our superintendent and had charge of the room where I was at work, and was over me. When my hand got caught on the set screw, it just pulled my arm off." On cross-examination plaintiff testified as follows: "Mr. Walls did not tell me to clean the machine while it was running, but simply told me to clean it. He did not tell me to clean it while the shaft was revolving, but he did not tell me not to clean it off while it was revolving, but he told me to clean it off and it was running when he told me. I had been working at this machine from Monday morning until Saturday morning." Upon his redirect examination, in answer to a question, plaintiff stated: "I knew of no rule forbidding the cleaning of the machines while in operation." To the question, "Was it your duty to wipe or clean them while they were in operation?" the defendant objected, upon the following grounds: "First, because it relates to matter about which the witness has been previously

examined; also, because it relates to matter which should have been brought out on chief examination." The court overruled the objection, and defendant excepted, whereupon witness answered, "Yes, sir." To the question, "Were you doing that at the time you were hurt?" the witness also replied, "Yes, sir."

The defendant's witness Walls on cross-examination testified as follows: "That he was the general boss of the spinning room of the Prattville Cotton Mills Company, and gave instructions and orders to the men directly under him. That right after plaintiff was injured he removed the set screw and put in a flat headed set screw, but put it back on yesterday while the case was in progress for the purpose of this trial." To the question, "Did you not give instructions to the hands?" he answered: "No, sir; not every time." This witness further testified that he "did not remember giving Henry McKinney any instructions on the day he was hurt."

To make a long story short, there is ample evidence in this record to carry the questions of liability of defendant, and contributory negligence and assumption of risk, on the part of the plaintiff, to the jury. Consequently, there was no error in the court's declining to take these questions from the jury, or to set aside the verdict because not supported by the evidence; and this disposes of many of the assignments of error argued.

It is true that it has been held by some courts of very high authority—notably, the Supreme Court of Massachusetts—that the master is not liable, as matter of law, in running revolving shafting with set screws projecting therefrom as was the set screws in this case, claimed to have constituted a defect. And this, for the reason, it is said, that it is a common device or contrivance, if not a necessary one, in use in connection

with such machinery. These same courts have also held that it is not actionable negligence on the part of the master to have such shafts and screws open and uninclosed, where it is shown that other masters, in like business, of reasonable and ordinary prudence, operate such machinery in the same manner.—*Hale v. Cheney,* 159 Mass. 268, 34 N. E. 255; *Rooney v. Sewall,* 161 Mass. 153, 159, 36 N. E. 789; *Goodnow v. Walpole,* 146 Mass. 261, 15 N. E. 576; *Ford v. Mt. T. S. Co.,* 172 Mass. 544, 52 N. E. 1065, 48 L. R. A. 96, and note.

This court, however, has never sanctioned, to such extreme limit, the doctrine of the nonliability of the master. It is more nearly in line with those courts which hold, as to the liability of the master, that (a) "The common law implies a contract between a master and a servant whereby the former undertakes, through himself or his agents, to use reasonable care to furnish and maintain suitable and safe places, machinery, and appliances for the work to be done, to hire competent servants, and to warn the servant of all dangers of the work known to him and not known to the servant; and the latter undertakes to assume the risk of injury arising from the dangers of the work which he knows, or ought to know, and the risk of injury caused by the negligence of all other servants in the common employment." (b) "At common law, the master impliedly agrees to use reasonable care to provide reasonably safe premises and places in and about which the servant is required to work, to furnish reasonably safe and suitable machinery and a sufficient supply of proper materials, tools, and appliances for the work to be done, and at all times during the continuance of the work to repair and to keep in the same safe and suitable condition the places, machinery, and appliances." (c)

"The master is not an insurer, and is not required to provide the safest possible plant or to adopt the latest improvements, or to warrant against latent defects which a reasonable inspection would not disclose; but the dangers inherent in the nature of the work must not be enhanced through his fault."—6 Mayf. Dig. 573.

Of course, statutes have imposed various and different duties and liabilities.

"It is often a question of fact and not of law whether or not a servant assumes the risk when he has knowledge of the defect and of danger attending the work. Though the servant may have knowledge both of the defect and of the danger, yet if against his judgment is set the judgment of a superior, who is an expert, who commands him to go on with the work and therefore to run the risk, it then becomes a complex question whether the inferior is not justified in surrendering his own opinion and obeying the command of his superior. The nature and the degree of danger, the extent of the servant's appreciation and understanding of the exigencies of the work all enter into consideration.— *Birmingham Co. v. Skelton,* 149 Ala. 465, 43 South. 110."—6 Mayf. Dig. 581.

"While a master is not required to use the best possible appliances, he may show that they were such as were adopted and used by many prudent persons engaged in the same business, yet this fact does not necessarily exempt the employer from liability. Prudent persons may do imprudent things and may fail to use proper appliances.—*Davis v. Kornman,* 141 Ala. 479, 37 South. 789." 6 Mayf. Dig. 585.

"In *Hough v. Railway Company,* 100 U. S. 213 [25 L. Ed 612], it was decided that among the established exceptions to the general rule as to the nonliability of the common employer to one employee for the neg-

ligence of a coemployee in the same service is one which arises from the obligation of the master, whether a natural person or a corporate body, not to expose the servant, when conducting the master's business, to perils or hazards against which he may be guarded by proper diligence upon the part of the master; that the master is bound to observe all the care which prudence and the exigencies of the situation require, in providing the servant with machinery or other instrumentalities adequately safe for use by the latter; and that it is implied in the contract between the master and the servant that, in selecting physical means and agencies for the conduct of the business, the master shall not be wanting in proper care."—*Wabash R. Co. v. McDaniels,* 107 U. S. 459, 2 Sup. Ct. 932, 27 L. Ed. 605.

Under these authorities, and the issues and the evidence in this case, we are of the opinion that the liability of the master, and the contributory negligence and the assumption of risk by the servant, were questions properly left to the jury; and that the court did not err in declining to set aside the verdict for lack of evidence to support it.

We will now notice the assignments of error insisted upon, which go, not to the right of recovery absolutely, but to errors to reverse the judgment rendered and to award the defendant a new trial.

The court did not err in allowing the witness Riley to testify that the machine in question was a dangerous one. The witness had sufficiently qualified to so testify.

The plaintiff was properly allowed to testify as to his knowledge of the dangerous character of the machinery which injured him.

There was no error in allowing testimony to the effect that this was the first injury or accident that hap-

pened at this particular machine. Such testimony certainly could not injure appellant, and it was competent for plaintiff to show his lack of knowledge of the dangerous character of the machine.

The question propounded to the witness, Walls, as to the machine's being openly and visibly dangerous, was highly leading and affords ground sufficient to affirm the court in its action in sustaining an objection thereto. The evidence was admissible; but the form of the question was objectionable, though its allowance was within the discretion of the trial court.

Charge A was properly refused, because it confused the parties and, if given, would have been misleading. It was also bad otherwise, as in assuming as a question of law that it was dangerous to clean the machinery while in motion. There was evidence to the contrary.

Charges B, I, J, and K were each bad, in that each requested the court to charge that there was no evidence of a given fact.

As before stated, there was also evidence which would authorize the jury in finding that plaintiff was instructed to clean the machinery while in motion.

Charge E ignored certain tendencies of the evidence, to the effect that plaintiff had no knowledge of the dangerous character of the machinery, nor of the danger per se of the act of cleaning the machinery while in motion.

Charge G ignored certain tendencies of the evidence going to show a defect in the ways, works, machinery, etc., and thus took this question from the jury.

Charge L required the court to instruct the jury that there was no evidence of a given fact, and was bad.

Charge M tended to limit the recovery to a part only of the counts.

Charges O and P failed to limit plaintiff's negligence to that which proximately contributed to the injury. Unless his negligence so contributed, it was no defense; but defendant received all the benefit to which it was entitled, under these charges, by the giving of charge D and F.

Charge T assumed as true a disputed fact; that is, that the plaintiff, before the injury, knew of the position of the set screw which caused his injury.

We are of the opinion that there is no reversible error in this record, and that the trial court properly denied the motion for a new trial.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.

