IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

EASTERN DIVISION.

KNOXVILLE, SEPTEMBER TERM, 1915.

SANFORD-DAY IRON WORKS *v.* MOORE.[*]

(*Knoxville.* September Term, 1915.)

**MASTER AND SERVANT.** Liability for injuries. Conformity to customary usage.

A defense conclusive in character is not made out by a showing on the part of an employer that, in respect to appliances or places of work furnished by him, he has conformed to the usage obtaining among employers of like character in the district, and though proof of conformity to customary usage makes a prima-facie case of nonliability when nothing else appears, this case is subject to be rebutted by proof that the appliance where set for use, or the place of work, was one so inherently and flagrantly dangerous that it must have been obviously so to the employer.

Cases cited and approved: Kilbride v. Carbon, etc., Co., 201 Pa., 552; Chattanooga Mach. Co. v. Hargraves, 111 Tenn., 476;

[*]On the effect of custom and usage as affecting measure of master's duty to guard machinery see note in 16 L. R. A. (N. S.), 140.

As to furnishing for servant's use article in general use as measure of master's duty see notes in 16 L. R. A. (N. S.), 126, 27 L. R. A. (N. S.), 181.

Prattville Cotton Mills v. McKinney, 178 Ala., 554; Winkler v. Power, etc., Co., 141 Wis., 244.

Cases cited and distinguished: Titus v. Bradford, etc., R. Co., 136 Pa., 618; Geno v. Fall Mountain Paper Co., 68 Vt., 568; Wabash R. Co. v. McDaniels, 107 U. S., 461; Texas, etc., R. Co. v. Behymer, 189 U. S., 468; Railroad v. Wade, 127 Tenn., 154.

---

## FROM KNOX

---

Appeal from the Circuit Court of Knox County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.—Von A. Huffaker, Judge.

Fowler & Fowler and A. Y. Burrows, for plaintiff.

Webb & Baker, for defendant.

Mr. Justice Williams delivered the opinion of the Court.

The Sanford-Day Iron Works, a body corporate, engaged in the foundry and machinery business in Knoxville, appealed in error from a judgment for personal injuries rendered by the circuit court in favor of Moore, one of its employees, to the court of civil appeals, where the judgment was reversed for several errors in the charge of the trial judge, only one of which will be treated of in this opinion, the other points made by the parties under their respective petitions for *certiorari* being disposed of orally and in a memorandum for judgment handed down with this opinion.

The employee, at the time of his injuries, was en-
gaged in work as an assistant to one Flora at a forging
hammer which was operated by means of a shaft, pul-
ley, and belt, the shaft being located about twenty feet
above the floor.  About ten months before the accident
the belt began to run off of the pulley, and Moore was
directed at times, when the regular hand for that pur-
pose was not conveniently near, to ascend and replace
it, a ladder being used for that purpose.  The replace-
ment of the belt was usually done by Moore while the
shaft was revolving.  At a distance of from twenty to
twenty-eight inches from the pulley was a hanger,
which was held in place by a collar in which for the
security of the collar was a setscrew.  This screw had
a square head, and projected above the surface of the
collar about one-half inch or an inch.

On the day of the injury, Moore was on the ladder
engaged in readjusting the belt, when, after it was
placed on the pulley, it immediately flew off, knocking
him against the rapidly revolivng shaft and the set-
screw.  This screw caught his clothing, and he was
wound around the shaft and his body bruised and
mutilated.

The injured employee testified that he had never ob-
served the setscrew and did not know it was there; he
having always made the adjustment of the belt while
the shaft was revolving.

There was also evidence offered tending to show
that projecting setscrews were still in use in well-reg-
ulated shops in the district, especially on overhead

shafting, but there was also adduced evidence in behalf of the employee that such projecting screws were not in general use by prudent operators, and in well-regulated plants of like character, at the time the shaft in question was installed, and that they had been discarded and counter-sunk screws adopted for use in lieu, due to the greater safety of the latter.

The trial judge instructed the jury in part in the following language:

"You will bear in mind in this connection that the law did not require that the defendant use the very latest and most approved setscrew, unless it was necessary to do so in order to make said place reasonably and ordinarily safe. It was sufficient if defendant used such setscrew as was ordinarily in use by well-equipped plants and machinery of similar character, provided the same was ordinarily safe."

Upon an assignment of error of the Iron Works attacking this portion of the charge because of its last and qualifying phrase, the court of civil appeals held that the charge was erroneous, saying:

"We think the unbending test of plaintiff in error's negligence in using said projecting setscrew in its machinery, at the time of the accident, was the ordinary usage of the business."

That court quoted from the case of *Kilbride* v. *Carbon, etc., Co.*, 201 Pa., 552, 51 Atl., 347, 88 Am. St. Rep., 829, the language of which, on the point under discussion, was taken from the earlier and leading case of

*Titus* v. *Bradford, etc., R. Co.,* 136 Pa., 618, 20 Atl., 517, 20 Am. St. Rep., 944, where it was said:

"All the cases agree that the master is not bound to use the newest and best appliances. He performs his duty when he furnishes those of ordinary character and reasonable safety, and the former is the test of the latter; for, in regard to the style of implement or nature of the mode of performance of any work, 'reasonably safe' means safe according to the usages, habits, and ordinary risks of the business. Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger, but of negligence; and the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same, and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way, commonly adopted by those in the same business, is a negligent way for which liability shall be imposed. Juries must necessarily determine the responsibility of individual conduct, but they cannot be allowed to set up a standard which shall, in effect, dictate the customs or control the business of the community."

It is in behalf of the Iron Works contended that this court adopted the principle that conformity to

the common usage in the particular line of business is the unbending test of nonculpability, thus announced in these Pennsylvania cases, in *Chattanooga Machinery Co.* v. *Hargraves,* 111 Tenn., 476, 482, 78 S. W., 105, when it quoted the substance of the above excerpt from *Kilbride* v. *Carbon, etc., Co.*, supra. It should be noted, however, that it was the plaintiff in that case who was claiming negligence on the part of the defendant company and who was seeking to prove that the employer company had not been reasonably careful in that it had failed to practice a method of testing the appliance that was in general use in well-regulated machine shops, and that was practiced by experienced and prudent machinists. The court merely held that evidence of such customary usage was competent to be adduced by the plaintiff. It was not ruled that same would be conclusive on the point of defendant's negligence in favor of the plaintiff. It is one thing to say that an employer may be found to be negligent if he fail to conform to a customary usage, and another thing to say that if he conforms he is thereby conclusively acquitted of culpability. The phase now presented was not dealt with in the *Hargraves Case.*

The Pennsylvania rule on the point has, however, been adopted in a number of jurisdictions. The earlier and some recent cases are cited in 3 Labatt, Master and Servant (2 Ed.), sec. 940.

The doctrine that conformity to common usage when established is conclusive in the employer's favor has been denied and combatted by the courts in several

other jurisdictions, and it is believed that an increasing number of tribunals, as they rule the point, are aligning themselves in opposition to that view. The protestant view is expressed in the case (involving a projecting setscrew) of *Geno* v. *Fall Mountain Paper Co.,* 68 Vt., 568, 35 Atl., 475, where this language was used:

"It would hardly be a defense for an employer to say that a certain machine upon which an employee had been injured was one of a kind in common use, if the employer was compelled as a prudent man to admit its use was, in his own judgment, dangerous.

" 'Common use' and 'the care of a prudent man' are not necessarily equivalent terms. That a machine is in common use is at most a circumstance bearing upon the question of negligence.

"A machine might be of a kind in common use, or even the best in use, and yet its safety in respect to its position or setting in a mill be questionable. In this case, even if the setscrew with a projecting head had been the most approved kind and in universal use, it could not be held as a matter of law that its employment, for that reason, would shield the defendant from liability."

The same fundamental principle was announced by the supreme court of the United States in *Wabash R. Co.* v. *McDaniels,* 107 U. S., 461, 2 Sup. Ct., 938, 27 L. Ed., 605, where Mr. Justice Harlan wrote:

"And to say, as matter of law, that a railroad corporation discharged its obligation to an employee—in

respect of the fitness of co-employees whose negligence has caused him to be injured—by exercising, not that degree of care which ought to have been observed, but only such as like corporations are accustomed to observe, would go far towards relieving them of all responsibility whatever for negligence in the selection and retention of incompetent servants. If the general practice of such corporations in the appointment of servants is evidence which a jury may consider in determining whether, in the particular case, the requisite degree of care was observed, such practice cannot be taken as conclusive upon the inquiry as to the care which ought to have been exercised. A degree of care ordinarily exercised in such matters may not be due, or reasonable, or proper care, and therefore not ordinary care within the meaning of the law.''

See, also, *Texas, etc., R. Co.* v. *Behymer,* 189 U. S., 468, 23 Sup. Ct., 622, 47 L. Ed.; 905.

Mr. Labatt in the work above referred to vigorously opposes the Pennsylvania rule at section 947, where other cases in accord with his views are collected, saying:

''In spite of the imposing array of authorities which have adopted the doctrine explained in sections 940 *et seq.,* the present writer has no hesitancy in saying that, in his opinion, the cases just cited embody the correct principle,'' etc.

Among the later cases so holding are *Prattville Cotton Mills* v. *McKinney,* 178 Ala., 554, 59 South., 498;

*Winkler* v. *Power, etc., Co.,* 141 Wis., 244, 124 N. W., 273.

In our opinion the sounder view is that maintained by the cases denying the rule of application to the full extent laid down in the *Titus Case*; that is, holding that a defense conclusive in character is not made out by a showing on the part of an employer that in respect to appliances or place of work furnished by him he has conformed to the usage obtaining among employers of like character in the district. The contrary rule, said to be "unbending," lacks that flexibility that is required to reach a just result in certain cases, of which this one is a type.

The doctrine is too absolute in that it denies a jury the right to find the common usage to be an obviously negligent one; and, in effect, the right to find that such other employers are not in that respect men of ordinary care and prudence, which may be the truth. The fact may be that the customary usage has its basis on motives of economy, self-interest, or a reckless disregard of the subordinate, and not on consideration for the safety of the employee. Is supineness on the part of an isolated employer to be denounced while the same supineness if only it be found in aggregate is to be vindicated?

The rule that tends to cause vigilance in the protection of human life is to be preferred over one that tends to encourage concerted indifference.

While the point has not been passed on in any of our cases involving the relation of master and servant, it

was said in *Railroad* v. *Wade,* 127 Tenn., 154, 153 S. W., 1120, Ann. Cas., 1914B, 1020, which was a case that involved the measure of care to be observed by a railway towards a licensee in its switching operations:

"It is proper to prove the customary way of doing such things in the business in hand, but such evidence is not controlling. It is competent only to throw light on the question, since a customary way may be a negligent way."

We believe that proper rules may be formulated for cases such as this, as follows:

When such proof of conformity to customary usage is made by an employer, there is made a *prima facie* case of nonliability, nothing else appearing.

This case is, however, subject to be rebutted by the plaintiff employee showing by proof that the appliance where set for use or the place of work was one so inherently and flagrantly dangerous as that it must have been obviously so to the employer.

The court of civil appeals, however, as above indicated, passed on other assignments of error in favor of the Iron Works, and properly remanded the case for another trial. Without entering into a discussion here of its action in those respects, we approve the last-named rulings. The trial on remand will be in conformity to those rulings and to what is said in this opinion on the matter segregated for discussion.