(81 South. 815)

## GULF STATES STEEL CO. v. FAIRES.
### (7 Div., 947.)

(Supreme Court of Alabama. April 10, 1919.)

1. MASTER AND SERVANT ⬤═286(15) — JURY QUESTION—SWITCH STAND.

Conflicting evidence *held* to make a jury question whether switch stand which injured plaintiff, a switchman, was placed too near track.

2. MASTER AND SERVANT ⬤═286(25)—PERSONAL INJURY ACTION—JURY QUESTION.

Evidence *held* to make jury question whether switch stand which injured plaintiff, a switchman, had been bent long enough to charge defendant with notice of defect.

3. MASTER AND SERVANT ⬤═289(21)—PERSONAL INJURY ACTION—JURY QUESTION.

Evidence *held* to make jury question whether railroad switchman injured by a bent switch stand near track was guilty of contributory negligence.

4. MASTER AND SERVANT ⬤═288(12)—PERSONAL INJURIES—JURY QUESTION.

Evidence *held* to make jury question whether a switchman, who was injured by a bent switch stand near track, assumed risk of such injury.

5. TRIAL ⬤═253(9)—INSTRUCTIONS IGNORING EVIDENCE.

Requested charges ignoring the defective condition of a switch stand which injured plaintiff, a switchman, were properly refused.

Appeal from Circuit Court, Etowah County; J. E. Blackwood, Judge.

Action by Plumer Faires against the Gulf States Steel Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Stokely, Scrivner & Dominick, of Birmingham, and Hood & Murphree, of Gadsden, for appellant.

Dortch & Allen, of Gadsden, and Charles A. Calhoun, of Birmingham, for appellee.

MAYFIELD, J. The plaintiff, appellee here, was a switchman in the employ of the defendant, appellant. He fell, or was thrown from an engine, while in the act of alighting from the switch board of the engine to throw the switch; and, in consequence thereof, the engine mashed or crushed one of his feet, inflicting painful and serious injuries. He brought this action against his employer to recover damages for the injuries suffered.

The negligence alleged and sought to be shown was: First, that the switch stand was placed too near the railroad track; second, that the switch stand was defective, in that it was bent over toward the track; and, third, the failure of the master to furnish the servant a safe place in which to work. The only negligence, however, attempted to be shown as to this, was that the switch stand was placed too near the track, or that it was bent over toward the track.

Two counts of the complaint were therefore under the first subdivision of section 3910 of the Code, as for defects in the ways, works, or machinery of the master; while the third was a common-law count as for failure of the master to provide the servant a safe place in which to work.

No one of the counts on which the trial was had was subject to the demurrer interposed; each substantially followed stereotyped forms often approved by this court. These forms of pleading negligence have been too long approved to be now held insufficient, whatever might be said against their sufficiency to allege negligence, if the question was now one of first impression.

The trial was had on the general issue as to these counts, and contributory negligence and assumption of risk pleaded in short by consent; and resulted in a verdict and judgment for the plaintiff.

It is insisted by appellant that the defendant was entitled to the affirmative charge on each of these issues.

The evidence has been carefully examined with and without the photographs found in the record, as to which there is some contention as to whether or not they are so authenticated and certified that we can consider them on this appeal. We have reached the conclusion that, if the photographs before us were or were not in evidence on the trial, still the case was properly submitted to the jury on all the issues.

It could serve no good purpose to discuss the evidence at length; but we will mention a few facts which, in our opinion, carried the case to the jury.

[1] There was a dispute in the evidence as to what was the proper distance to place the switch stand from the track in order for it to be safe. All of the evidence showed that the stand was nearer to the track than some of the evidence showed was the proper and usual distance to place the stand. The evidence was also in conflict as to the distance of the stand from the track, and some showed it to be considerably closer than defendant's witnesses said was the proper and safe distance. It was therefore open for the jury to find that the stand in question was too near the track, and that its proximity to the track rendered it an unsafe place, and constituted a defect in the works of the master.

[2] The evidence also shows that the lamp or stand in it was bent over toward the track. It is true, as contended by counsel for appellant, that the evidence does not show how long it was so bent over; but that is not necessary. It was open for the jury to infer that it was so bent at the time of

the injury, and had been so long enough before to charge the one whose duty it was to inspect to have discovered the defect; there being evidence that the lamp was put in and taken out each day. That is to say, the lamp or the stand in which it was placed of necessity had to be looked after twice a day.

It could not therefore, as matter of law, be said it was not shown to have been thus bent over long enough before the accident to have been discovered by the exercise of reasonable diligence. Had it been an object that did not require such constant looking after, the rule might be different.

[3, 4] As to whether or not the plaintiff was guilty of contributory negligence or assumption of risk were also questions for the jury. The danger was not so apparent or obvious as to make the plaintiff guilty of contributory negligence, if he knew of the defective condition before the injury.

It follows therefore that there was no error in refusing any of defendant's requested charges which were in effect affirmative instructions in its behalf.

It is often a question of fact, and not of law, whether a servant assumes the risk when he knows both of the defect and danger. The danger must be so apparent and obvious that a reasonably prudent person under similar circumstances would not do or act as plaintiff did. The mere fact that a servant knows of a given defect, and that it may produce injury, does not warrant him in quitting the service or refusing to use the defective instrument or machinery. As to when such use of defective machinery by a servant amounts to contributory negligence or assumption of risk is usually a question for the jury; but often knowledge of the defect and consciousness of the danger may be such that it is a question of law, and not of fact; but in most cases it is a question of fact. Prattville Cotton Mills Co. v. McKinney, 178 Ala. 568, 59 South. 498; B. R. L. & P. Co. v. Milbrat, 201 Ala. 368, 78 South. 224.

There was no error in refusing any of defendant's requested charges. The court could not as matter of law, under the issues and evidence in this case, say that 15 inches was a safe distance at which to place the switch stand from the tank of the engine, and such was the effect of charge 8. There was a conflict in the evidence as to this question. Nor could the court say as matter of law under the evidence 4 feet was a safe distance to place the stand from the rail. There was a conflict in the evidence as to the proper distance.

[5] Charges 3 and 7 ignored the defective condition of the switch stand, in that it was bent in toward the track.

If the photographs are to be looked to, they tend to show that the stand or lamp leans toward the track. As stated before, we do not pass on the question as to whether or not the photographs or any of them were properly authenticated, or certified, for the reason we are of the opinion that the case must be affirmed, with or without the photographs as a part of the record.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.