## WILLIAMS v. ALABAMA FUEL & IRON CO.
### (7 Div. 411.)

(Supreme Court of Alabama. Oct. 30, 1924.
Rehearing Denied Nov. 20, 1924.)

**1. Master and servant ⊂⇒228(3)—Violation of penal statute held good contributory negligence defense to action for miner's death in gas explosion.**

In action for death of employé in mine explosion, plea of violation of penal statute (Acts 1911, p. 513, § 32), in that plaintiff's decedent negligently entered into room where fire boss had warned him, a few minutes before explosion, that gas existed in dangerous quantities, and that injuries resulted proximately from such conduct, *held* sufficient to constitute good contributory negligence defense to simple negligence counts in complaint.

**2. Evidence ⊂⇒317(2)—Hearsay evidence as to death of plaintiff's decedent properly excluded.**

In action for death of employé in coal mine, death being uncontroverted and supported by positive evidence, exclusion of answer to question, "Have you ever heard of any one saying he was still alive?" *held* not reversible error.

**3. Trial ⊂⇒110—That counsel, in cross-examining witness, shook his finger at him held not objectionable.**

That counsel, in cross-examining plaintiff's witness, shook his finger at him was not objectionable, in the absence of anything to indicate that witness was thereby intimidated and prevented from telling the truth.

**4. Witnesses ⊂⇒387—Cross-examination of plaintiff's witness held not improper as argumentative.**

In action for death of employé in mine explosion, cross-examination eliciting answer of plaintiff's witness, "No, sir; I don't think I did, to be honest, testify that I didn't step that distance," on former trial, referring to distance between mine rooms where deceased worked, *held* not abuse of right to cross-examine, as arguing with witness.

**5. Master and servant ⊂⇒270(1)—Testimony mine had good reputation held irrelevant.**

In action for death of employé in mine explosion, testimony of fire boss at a different mine, that "that mine has the reputation of being the best kept mine in the state," was irrelevant.

**6. Evidence ⊂⇒545—Witnesses ⊂⇒236(1)—Direct examination of witness for plaintiff as to testimony in another case held properly excluded as irrelevant and not showing him qualified as an expert.**

In action for death of employé in mine explosion, direct examination of witness as to testimony in another case arising out of same explosion, "Did you testify, not only as an expert, but as to the actual facts in that case?" *held* properly excluded as irrelevant, and not showing him qualified to testify as expert.

**7. Witnesses ⊂⇒270(2)—Cross-examination of defendant's fire boss as to reasons for his discharge held irrelevant.**

In action for death of employé in mine explosion, plaintiff's cross-examination of fire boss as to reason why he was discharged 10 months later was properly excluded as irrelevant.

**8. Witnesses ⊂⇒236(1)—Testimony as to family relations of witness properly excluded.**

Refusal to permit plaintiff, in action for death of miner in gas explosion, to show by defendant's fire boss, who was discharged 10 months after accident, how many children he had at that time, who was his family, or whether he and his family were living in a house together, *held* proper.

**9. Witnesses ⊂⇒268(1)—Exclusion of cross-question as to meaning of "once in awhile," as relating to testimony that witness got drunk, held not reversible error.**

Where witness on cross-examination testified that he drank whisky at time of accident, might have gotten drunk occasionally, "I mean just once in awhile I might have got drunk," exclusion of cross-question, "What do you mean by once in awhile?" was not reversible error.

**10. Witnesses ⊂⇒268(1)—Refusal to permit mine fire boss, testifying to only one kind of gas in mine when explosion occurred, to be asked as to different explosive gases, held not reversible error.**

In action for death of employee in mine explosion, a fire boss having testified on cross-examination that he knew of only one kind of gas, and that was explosive gas which was in mine rooms when explosion occurred, refusal to permit him to be asked as to different gases and their properties was not reversible error.

**11. Witnesses ⊂⇒268(1)—Exclusion of cross-examination of fire boss, as to whether any one else saw boards placed at mine rooms, held not reversible error.**

In action for death of employé in mine explosion, defendant's fire boss having testified to placing two boards at the mine rooms where explosion occurred, with marks indicating gas was therein, on morning before explosion, exclusion of cross-examination as to whether he knew of any one else who saw the boards, though admissible, was not reversible error.

**12. Witnesses ⊂⇒286(6)—Redirect examination as to written reports inquired about on cross-examination held not reversible error.**

In action for death of employé in mine explosion, oral evidence as to contents of written report, on redirect examination, where plaintiff on cross-examination had inquired of the same reports and their contents, *held* not reversible error.

**13. Witnesses ⊂⇒282½—Objection, on cross-examination, to question already answered, properly sustained.**

Where witness had testified that he could not tell how long he worked for defendant after explosion causing injuries sued for, it was not error, on cross-examination, to sustain objec-

tion to plaintiff's question whether he stayed as much as four years.

**14. Witnesses** ⊚⇒**268(1)—On cross-examination as to another witness drinking whisky, exclusion of question as to how much witness testifying took held not erroneous.**

Where witness, on cross-examination, testified he could not tell whether preceding witness drank whisky or not, but said he took a drink some time, court did not err in excluding plaintiff's question, "How much did you take?" witness afterwards testifying, in answering plaintiff's questions, that he did not drink to excess, but has been drunk, and that he was not drunk on day of accident.

**15. Master and servant** ⊚⇒**270(5)—Engineer properly allowed to testify for mine owner as to actual condition of mine prior to explosion.**

In action for death of employé in mine explosion, professional engineer and expert was properly allowed to testify for defendant as to actual condition of certain rooms and a gob wall, distance from cross-cut to place where miners worked, and amount of coal, and distance miners would go per day in mine a few days prior to the explosion, as shedding light on conditions at time of explosion.

**16. Appeal and error** ⊚⇒**692(1)—Error not to be predicated on exclusion of question to mine engineer as to use of questions, by examining board, in other states, where questions not in appeal record.**

In action for death of employé in mine explosion, error cannot be predicated on exclusion of a question to defendant's professional mine engineer and expert as to questions used by the examining boards in different states, where such questions do not appear in the record on appeal.

**17. Appeal and error** ⊚⇒**1056(1)—Exclusion of expert testimony of defendant's witness, on cross-examination, as to certain mine conditions, held harmless error.**

In action for death of employé in mine explosion, though professional engineer and expert could properly testify, on cross-examination, whether gas came into mine from coal, and how much hotter other mines were than defendant's, and that in hot mine it was more important to have an efficient lamp, exclusion thereof was harmless error.

**18. Evidence** ⊚⇒**513(11)—Expert's hypothetical testimony for defendant as to use of lamp by mine fire boss held proper.**

In action for death of employé in mine explosion, defendant's expert witness was properly allowed to testify that, if fire boss uses a lamp in a place and thereby detects gas therein, and so marks the place, efficiency of lamp has been demonstrated, where evidence justified such hypothetical question.

**19. Master and servant** ⊚⇒**270(4)—Testimony of state mine inspector as to conditions of mine held proper.**

In action for death of employé in mine explosion, state mine inspector was properly allowed to testify that he visited and inspected mine about every 30 days during year of explo-

sion, and that ventilation in rooms where deceased worked was always reasonably good, and that on his recommendation two fans were substituted for one.

**20. Appeal and error** ⊚⇒**1048(6)—Plaintiff should have been allowed to ask expert witnesses for defendant as to best material to use in safety lamps in mine to detect gas.**

In action for death of employé in mine explosion, plaintiff's cross-examination of state mine inspector and other expert witnesses as to what is best material to use in safety lamps to detect gas, and if lard oil is efficient material for such use, and at what per cent. such lamps will detect gas, should have been allowed, but its exclusion was harmless error.

**21. Appeal and error** ⊚⇒**1048(6)—Exclusion of cross-questions to state mine inspector held harmless error.**

In action for death of employé in mine explosion, exclusion of cross-questions to state mine inspector, testifying for defendant, whether he knew what the authors, named by him, of books on mining said or wrote about "barometric pressure," and what he knew about "sight indicators," etc., if erroneous, was harmless.

**22. Witnesses** ⊚⇒**379(2)—Testimony as to report, by witness to another, which he denied, held properly admitted to impeach him.**

In action for death of employé in mine explosion, testimony, for defendant, of fire boss that previous witness reported to him a day or two after explosion that rooms where deceased worked had been fenced off and gas therein marked down prior to explosion, was proper to impeach such witness' denial thereof; predicate having been properly laid.

**23. Trial** ⊚⇒**62(1)—Testimony for defendant, on rebuttal, as to matters elicited by plaintiff on direct, held properly admitted.**

Testimony for defendant, on rebuttal, as to matters elicited by plaintiff on direct introduction of evidence, *held* properly admitted.

**24. Master and servant** ⊚⇒**296(13)—Charge on contributory negligence held erroneous.**

In action for death of employé in mine explosion, oral charge that, if when plaintiff's decedent and his "buddy" approached, fire boss told them not to go into mine or into that work place, and over that instruction deceased went there, and as a result explosion occurred, plaintiff could not recover because of contributory negligence, etc., *held* erroneous as not properly stating issues.

**25. Appeal and error** ⊚⇒**1064(1)—Misleading charge as to burden of proof held harmless error.**

In action for death of employé in mine explosion, charge that burden was on plaintiff to show that decedent was working in a place he had a right to work, although misleading, *held* not reversible error.

**26. Master and servant** ⊚⇒**296(13)—Charges on contributory negligence in entering mine after warning held erroneous, under plea and statute.**

In action for death of employé in mine explosion, charges as to contributory negligence

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

in entering mine after warning, by fire boss, "not to go into that mine or into that work place," *held* insufficient, since such words were not equivalent to "gas exists in dangerous quantities," as used in plea and statute.

**27. Trial ☞260(1)—Plaintiff's written charges covered by oral charge held properly refused.**

Under Code 1907, § 5364, as amended (Code 1923, § 9509), requested written charges, substantially and fairly covered by court's oral charge and in plaintiff's given charges, were properly refused.

Appeal from Circuit Court, St. Clair County; O. A. Steele, Judge.

Action for damages for wrongful death by Mary Williams, as administratrix of the estate of Mike Harris, deceased, against the Alabama Fuel & Iron Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

These charges were given at defendant's request:

"(5) The court charges the jury that, if you believe from the evidence that Mr. Tate told plaintiff's intestate, at the mouth of the mine, the morning he was injured, in substance, that there was gas in rooms 51 and 52 where plaintiff's intestate had been working, then I charge you that plaintiff cannot recover."

"(13) I charge you that the burden is upon the plaintiff to reasonably satisfy you from the evidence that her intestate, Harris, was working in a place in the mine where he had the right to work, and, if she has not reasonably satisfied you from the testimony that he had the right to go into the place into which he did go, when injured, on the morning he was injured, then I charge you that she cannot recover."

"(24) If you believe from the evidence that Tate, the fire boss, told plaintiff's intestate, at the mouth of the mine, the morning he was injured, that there was gas in the room where intestate had been working, then I charge you that plaintiff cannot recover."

"(30) The court charges the jury that, unless plaintiff has reasonably satisfied you from the evidence that the fire boss in substance told her intestate on the morning he was injured that the working place into which he entered that morning was all right or free from gas, the plaintiff cannot recover."

"A. The burden is upon the plaintiff to reasonably satisfy you from the evidence that Mike Harris, at the time he was burned, was in his proper place, and, if you believe from the evidence that he entered room 51 for the purpose of getting his tools, and after Mr. Tate had instructed him not to do so, then I charge you that plaintiff cannot recover."

W. A. Denson, of Birmingham, for appellant.

Plaintiff should have been permitted to prove the death of intestate. 4 Ency. of Evi. 50; Secrist v. Green, 3 Wall. 744, 18 L. Ed. 153; Scott v. Ratliffe, 5 Pet. 86, 8 L. Ed. 54.

Cross-examining counsel should not be permitted to browbeat or intimidate witnesses. 40 Cyc. 2517; Farmers' Bank v. Richards, 119 Mo. App. 18, 95 S. W. 290; State v. Miller, 43 Or. 325, 74 P. 658. The condition of Edgewater mine should have been permitted to be shown in rebuttal. Likewise the habits of Pitts. 40 Cyc. 2520, 2616. Oral testimony as to the contents of the written report was improperly admitted. Ala. F. & I. Co. v. Williams, 207 Ala. 99, 91 So. 883; Ga. Pac. v. Propst, 90 Ala. 2, 7 So. 635; Ala. Mid. v. Coskry, 92 Ala. 256, 9 So. 202; Foster v. State, 88 Ala. 187, 7 So. 185; Home, etc., v. Whidden, 103 Ala. 206, 15 So. 567; Avant v. Avant, 207 Ala. 409, 92 So. 651; Boykin et al. v. Collins, 20 Ala. 233; Kidd & Co. v. Cromwell Co., 17 Ala. 652; McCormick & Richardson v. Joseph & Anderson, 83 Ala. 403, 3 So. 796; Phillips v. Amer. Guano Co., 110 Ala. 525, 18 So. 104; Brent v. Baldwin, 160 Ala. 641, 49 So. 343; Fletcher v. Riley, 169 Ala. 440, 53 So. 816; 25 A. & E. Ency. Law, 165; 1 Greenl. on Evi. § 82; Peterman v. S. C. O. Co., 15 Ala. App. 491, 73 So. 991; Harvey v. Thorpe, 28 Ala. 262, 65 Am. Dec. 344; 10 R. C. L. 912. There was error in rulings on cross-examination of witness Tate. L. & N. v. Hurt, 101 Ala. 44, 13 So. 130; B. & O. v. Henthorne, 73 F. 634, 19 C. C. A. 623. And to witness Dryer. L. & N. v. Webb, 97 Ala. 311. There was error in the court's oral charge. Pioneer M. & M. Co. v. Smith, 150 Ala. 359, 43 So. 561; Sou. Ry. v. Howell, 135 Ala. 649, 34 So. 6; Sou. Ry. v. Shields, 121 Ala. 465, 25 So. 811, 77 Am. St. Rep. 66. Plea 3 was subject to demurrer. Porter v. T. C. I. Co., 177 Ala. 415, 59 So. 255; Mascot Coal Co. v. Garrett, 156 Ala. 297, 47 So. 149; Simmerman v. Hills Creek Coal Co., 170 Ala. 553, 54 So. 426; Foley v. Pioneer M. & M. Co., 144 Ala. 179, 40 So. 273; Green v. B. C. I. & L. Co., 162 Ala. 609, 50 So. 289; Tutwiler Coal Co. v. Farrington, 144 Ala. 158, 39 So. 898; M. & B. R. Co. v. Holborn, 84 Ala. 133, 4 So. 146; Osborne v. Ala. S. & W. Co., 135 Ala. 571, 33 So. 687.

Percy, Benners & Burr, of Birmingham, for appellee.

Counsel discuss the questions raised and decided, but without citation of authorities.

MILLER, J. This is a suit for damages by Mary Williams, as administratrix of the estate of Mike Harris, deceased, against the Alabama Fuel & Iron Company, a body corporate, for the death of her intestate, proximately caused by the negligence of the defendant.

There was a verdict by the jury in favor of the defendant, and from a judgment thereon by the court this appeal is prosecuted by the plaintiff. This cause has been here be-

fore.' See report of it in 207 Ala. 99, 91 So. 879; Haywood v. Ala. F. & I. Co., 203 Ala. 550, 84 So. 259; Ex parte Ala. F. & I. Co., 193 Ala. 496, 69 So. 115.

There are three counts in the complaint. Each was submitted to the jury, and each averred her intestate was an employé of the defendant. The first count averred negligence on the part of the defendant in negligently failing to provide a reasonably safe place for her intestate to perform his duties. in its mine under his employment. The second and third counts charged a violation of the state mining act, which requires the operators of coal mines 'to provide and maintain ample means of ventilation. Gen. Acts 1911, p. 516, § 40.

The second count charged the negligent failure of defendant to comply with this statute, and the third count charged the violation of the statute, treating its violation as negligence per se. The defendant filed to each count two pleas. No. 1 is the general issue, and No. 3 is a special plea of contributory negligence. There are 411 errors assigned, and assigned error No. 411, the last one, is the judgment of the court overruling demurrers of plaintiff to this contributory negligence plea, No. 3. It is assigned and argued last, but we will treat it first, because the issue should be first determined. This plea reads as follows:

"(3) Plaintiff's intestate was guilty of contributory negligence which proximately contributed to cause the injuries which resulted in his death, in that intestate negligently entered into, or dangerously near to, a place in defendant's mine, namely, the place in defendant's mine where said explosion occurred, in which he had been notified in person, a few minutes before said explosion, by the fire boss that gas existed in dangerous quantities; and as a proximate result of his negligence in such regard his injuries were received."

That part of the penal statute set up in this plea is found in section 32, p. 513, Acts 1911, and provides:

"It shall be 'a misdemeanor for any person to enter in or dangerously near to any place in the mine in which he has been notified in person that gas exists in dangerous quantities."

The title of the act containing this provision is stated as follows: "To regulate the mining of coal in Alabama;" and it is evident it was enacted for the benefit and protection of owners, operators, and employés of coal mines, a class to whom this penal provision necessarily applies, and it was enacted also for the benefit of the owner or operator of the mine, the defendant in this case, who seeks to invoke its violation, as distinguished from the public generally. Reynolds v. Woodward Iron Co., 199 Ala. 231, headnote 2, 74 So. 360.

A penal statute may be set up as a defense to a simple negligence count, if its violation by the plaintiff contributed proximately in causing the injury complained of; but "the statute or ordinance violated, however, must have been enacted for the benefit of the party who seeks to invoke its violation, as distinguished from the public generally, or a class to whom the ordinance necessarily applies." Watts v. Montgomery T. Co., 175 Ala. 102, 106, 57 So. 471.

This penal statute was enacted primarily for the benefit of mine owners or operators and their employés, and the defendant has the right to set its violation up as a defense to the simple negligence counts in this complaint. The violation of a penal statute is negligence per se; but, as a good defense in a contributory negligence plea, it must aver facts showing its violation by plaintiff contributed proximately in causing the injury alleged. Mobile Lt. & R. Co. v. McDonnell, 207 Ala. 161, 92 So. 185; Wilson v. L. & N. R. Co., 146 Ala. 285, 40 So. 941, 8 L. R. A. (N. S.) 987; City Ice & Del. Co. v. Lecari, 210 Ala. 629, 98 So. 901; and authorities supra.

[1] Each count in the complaint alleges the injury producing death was caused by gas explosion in the mine. This plea alleges facts showing the statute was violated by the plaintiff; it alleges the fire boss, a few minutes before the explosion, notified, in person, the plaintiff that gas existed in dangerous quantities at the place where the explosion occurred, and that plaintiff then negligently entered into or dangerously near this place, and as a proximate result of his negligence in such regard his injuries were received. The plea avers facts showing the statute was violated by plaintiff; it avers it was negligently violated by plaintiff; and it avers, as a proximate result of this contributory negligence of plaintiff, his injuries were received. This plea sets up sufficient facts to constitute a good contributory negligence defense to the simple negligence counts in the complaint, and the court did not err in overruling demurrers of plaintiff to it. Authorities supra.

The decedent, Mike Harris, and Will Hatcher, were "buddies" working for defendant in its mine. Their rooms were known as Nos. 51 and 52 in 8 north heading. There was a gas explosion in these rooms in December, 1912; Mike Harris was burned by it, from which he died. A few days, two or three, before the explosion, gas was found in these rooms, and Mike and Will were notified that gas was there, not to go in them, it was dangerous, and they were assigned work in another place in the mine. These rooms were free from gas prior to that time.

The evidence is in conflict as to the cause of the accumulation of this gas in these rooms. The different theories indicated by the testimony, and the responsibility for it, whether on defendant or decedent, as shown

by the tendencies of the evidence, we need not discuss. The evidence of the plaintiff tended to show, on the morning of the explosion, as decedent and Will Hatcher went to the mouth of the mine, they were notified in person by the fire boss, Mr. Tate, that their rooms, 51 and 52, were free from the gas, and they could return there to work, and as Mike Harris entered his room with a lighted lamp the gas ignited, there was an explosion, he was burned, and afterwards died from the injury. The evidence for the defendant tended to show, when Mike and Will went to the mouth of the mine that morning, the fire boss, Mr. Tate, informed them in substance that gas in dangerous quantities was in their rooms, 51 and 52, and they must not go there, and Mike replied his tools were there and he was going to get them, and he was told by this fire boss not to do so; and that Mike, against these instructions of this fire boss, went with lighted lamp to these rooms for his tools, or to work; the gas becoming ignited from the lamp, causing the explosion which injured him causing his death.

[2] Will Hatcher testified that he and Mike Harris after the explosion were in the hospital together, and that he had not seen him since the day "I heard he was dead." The court would not then permit witness to answer this question asked by plaintiff: "Have you ever heard of anybody saying he was still alive?" The court will not be placed in error, if any, for failing to permit plaintiff to prove his death by hearsay, because there is positive proof in evidence of his death, and there is no evidence indicating he is still alive. The death of Mike Harris is not controverted by the evidence.

[3-5] The attorney for defendant, in cross-examining a witness of plaintiff, "shook his finger at him." The plaintiff objected to it, and the court overruled the objection. In this we cannot say the court erred, as there is nothing to indicate that the witness was thereby intimidated and prevented from telling the truth. One witness of plaintiff testified he stepped the cross-cut between rooms 51 and 52, and it was about 75 feet. The witness was asked, and answered that, "No, sir; I don't think I did, to be honest, testify that I didn't step that distance," on the former trial. The plaintiff objected, and asked the court to prevent counsel from arguing with witness. The court overruled the objection, and refused the request. The court will not be placed in error by this ruling. The court did not permit the defendant to abuse, thereby, its right to cross-examine this witness in that way. One witness for plaintiff testified he was now fire boss and foreman at Edgewater mine, belonging to the Tennessee Coal & Iron Company. The court did not err in refusing to let this witness state or answer for plaintiff that "that mine has the reputation of being the best kept mine in the state." It was a different mine from the one in question in this cause; its reputation would shed no light on the issues in this case, nor would it add to or detract from the qualifications of the witness as an expert.

[6] J. F. McCurty, witness for plaintiff, testified on direct examination that he worked at Acton mines; he and his son-in-law were there at the time of the explosion; that he was a witness in a case growing out of that explosion, tried at Columbiana. The court sustained objection of defendant to the following question asked him by plaintiff: "Did you testify, not only as an expert, but as to the actual facts in that case?" This would neither tend to show he was qualified to testify as an expert in this case, nor would the answer shed any light on any issue in this case. He had already testified he was there at the time of the explosion, and was a witness in a case growing out of it. The court was correct in this ruling.

[7] R. J. Pitts, witness for defendant, testified he was fire boss of defendant at the time of the explosion, and it was his duty to examine the north side of the mine, in which rooms 51 and 52 were located, for gas, which he did; that he found gas therein that morning, and made written report thereof to Mr. Zeigler, the mine foreman. The other fire boss, Mr. Tate, had charge of examining, for gas, the south side of the mine. It was Tate's duty that morning to be at the mouth of the mine, take the reports of the fire boss, and notify the miners of the condition of their places in the mine. His written report was turned over to Tate. On cross-examination, this witness testified he left this place of work voluntarily once or twice, and got fired once, 8 or 10 months after this accident, because they claimed he did not give satisfaction. The following questions were then asked by the plaintiff: "You know their reason—what reason they assign—you were not giving satisfaction? What was the occasion of your discharge by the Alabama Fuel & Iron Company after this accident?" and the court sustained objections of defendant to each of them. These questions called for no facts which would tend to prove or disprove the issue in this case. It appears he was discharged 8 or 10 months after this explosion. We find no error in these rulings of the court.

[8-10] The court very properly would not permit the plaintiff to show, by this witness, how many children he had at that time, who was his family, or whether he and his family were living in a house together. He testified on cross-examination that he drank whisky at the time of this accident; might have gotten drunk occasionally. "I mean just once in awhile I might have got drunk." The court committed no reversible error, if error at all, in refusing to let plaintiff ask wit-

ness the following question: "What do you mean by once in awhile?" He had testified he got drunk occasionally. This witness, on cross-examination, testified he knew of only one kind of gas, and that was explosive gas which was in these rooms that morning, and he did not know it otherwise, and did not know how many kinds of explosive gas there were in this mine—their names or the ingredients of them. After the foregoing testimony, the court did not commit reversible error in refusing to allow plaintiff to ask this witness the questions below; but the court could have properly permitted the witness to answer them, if he knew how to do so. It is evident the witness could not answer these questions:

"Well, you know anything else about it?
"What are the physical properties of carbon monoxide?
"What is it composed of?
"That the only kind of combustion you know of?
"What is methane, Mr. Pitts?
"What is ethane?
"Does methane occur in coal mines?
"Was any ethane in this mine at the time of the accident, Mr. Pitts?
"Mr. Pitts, how do you detect the presence of methane?
"What is naptha?
"Did you ever study one?
"On your examination was any question asked you about sight indicators?"

[11] Pitts, the fire boss of defendant, testified he placed two boards at these rooms, 51 and 52, with marks on them indicating gas was therein on the morning before the explosion; and the court did not commit reversible error in refusing to let him state, on cross-examination by plaintiff, whether he knew of anybody else who saw these boards. He could have answered without injury to any one, if he knew, by stating or giving the name of any person who saw the boards.

[12] The court, over objection of the plaintiff, allowed the defendant to propound this question to its witness Pitts on redirect examination: "When that report was presented to you in the courthouse, did it have your handwriting on it, showing these places marked out?" The witness answered: "Yes, sir." By this question and answer, the defendant was proving the contents of a written report of the condition of rooms 51 and 52 on the morning of the explosion, made by the witness Pitts. This question calls for the contents of the report made by Pitts, but this was not error, because the plaintiff, on cross-examination of this witness, had inquired of those written reports and their contents. The court allowed Mr. Tate, the fire boss, on his direct examination, over objection of plaintiff, to testify that the reports made that morning by him and Mr. Pitts for the north side of the mine, and the book in which the reports were kept, showed that rooms 51 and 52 on the eighth north heading were marked out for gas, and that those reports showed those two rooms marked out for gas at the time he testified first as a witness in this case; and they were signed by the witness and Pitts, and countersigned by the bank boss.

Evidence to the same effect as to the contents of this report was brought out by the plaintiff, on cross-examination of a witness of defendant hereinbefore referred to in this opinion, and the court did not err in allowing the defendant to make this proof, by this witness, of its contents.

[13, 14] This witness Tate testified he did not remember exactly how long he remained and worked at this time after the explosion; could not tell whether it was two years, three years, or four years, just exactly; "have no recollection how long I stayed there; it might have been two months or three months, or something like that." The court, after the foregoing testimony, did not err in sustaining the objection of the defendant to this question by plaintiff: "Been as much as four years?" The witness had already answered the question. This witness, on cross-examination, testified he could not tell whether Mr. Pitts drank whisky or not, and that he knew nothing of Pitts' drinking. Witness said he took a drink some time. The court did not err in sustaining objection to plaintiff's question, "How much did you take?" The witness afterwards testified, to questions of plaintiff, that he did not drink to excess, but has been drunk, and that he was not drunk the day this accident occurred.

[15] There was evidence tending to show this mine was worked by double rooms, a miner in each. As the work progressed it was the duty of the two miners to make, from the dirt and rock, a gob wall, and build it up to the ceiling of the room, and extend it, as the work was continued, in mining the coal. The wall was in place of brattices, and aided in causing the air to extend to the work place of the miner. The air circulated from room to room through crosscuts. There was ample air in these rooms, and they were free from gas until about three days before the explosion. The distance from those crosscuts to the place where the miners were working was relevant, and it varied by the different witnesses. Dyer, witness for defendant, a professional engineer and expert, was properly allowed by the court to testify as to the actual condition of these rooms on the 6th of December, before the explosion on December 20th, as to the gob wall, distance from the crosscut to the place where the miners were then at work, and the amount of coal, and the distance the miners would go in a day in mining the coal. This would shed some light on the condition of the rooms at the time of the explosion as to air, gob

wall, and distance from the face of the room to the crosscut.

[16-18] The plaintiff was not permitted on cross-examination to ask this witness the following question: "They—those questions are used by the examining boards of the different states, Alabama included, aren't they?" The questions mentioned are not before us. They do not appear in the record, and we cannot place the court in error, unless the error appears affirmatively in the record. So we must hold in this ruling the court did not err. The court could have very properly allowed plaintiff to ask this witness, on cross-examination, was the gas that came in this mine from the coal, and how much hotter other mines were than this mine, and that in a hot mine it was more important to have an efficient lamp than in a mine that is not hot, as the witness was an expert; but the court will not be placed in error for refusing to allow plaintiff to make these inquiries, as it appears no injury was thereby done the cause of plaintiff. The court did not err in permitting this expert witness to testify for defendant, if a fire boss uses a lamp in a place, and detects by the use of that lamp that there is gas in the place, and so marks the place, the efficiency of the lamp has been demonstrated. There was a tendency of the evidence on which this hypothetical question could be based.

[19-21] Frank Hillman, witness for defendant, was state mine inspector for four years, which was during the time of this explosion. The court did not err in allowing him to testify that he visited and inspected this mine about every 30 days during 1912, the year of the explosion; that the ventilation in rooms 51 and 52 in eighth north heading was always reasonably good on his inspections, prior to December 20, 1912, and that the mine had one fan until he recommended two; then two were used. The court should have allowed plaintiff, on cross-examination, to ask this witness and other expert witnesses what is the best material to use in safety lamps in a mine to detect gas, and, if lard oil is an efficient material to use in safety lamps in detecting gas, and at what per cent. such lamps will detect gas. He was an expert, and there was evidence on which such question could rest. The court will not be reversed for these rulings, as we see no injury thereby to the rights of plaintiff. The court might have allowed the witness to testify on cross-examination, if he knew, what the authors (named by witness) of books on mining, said or wrote about the "barometric pressure," and what this witness knew about "sight indicators," and whether in gas mines like this lamps should have "sight indicators"; but the court did not err therein, as we see no injury thereby to the cause of plaintiff.

[22] The court did not err in allowing M. L. Tate to testify for defendant that Charlie Yarbrough, a day or two after the explosion between the mine and commissary, told him that he was with Pitts when he marked up these rooms (51 and 52) for gas; he had the place fenced off, got a board, and marked it and put it down. This witness (Yarbrough) on his cross-examination had denied having this conversation with Tate, and on his rebuttal examination he again denied having this conversation. He testified, in substance, that he made no such statements to Tate. The predicate to impeach him by proof of these statements contradictory of his testimony was properly laid by the defendant. 12 Michie, Dig. p. 1304, § 296.

[23] The court would not permit the plaintiff, on the introduction of her rebuttal testimony, to show by witness Charlie Yarbrough whether the gob wall in rooms 51 and 52 was in proper condition at the time of the explosion, if it was cemented, and if there were holes in it. The court will not be placed in error for these rulings, because the testimony of her witnesses, on direct introduction of evidence, tended to show the condition of this wall, and that it was good—properly built.

[24] This cause must be reversed for errors hereafter mentioned, and what this court has written in this case on this and former appeals, in connection with the authorities cited, will be sufficient to guide the court on another trial. The court charged the jury orally:

"If, when these two colored men approached, Mr. Tate told them not to go into that mine or into that work place, and over that instruction Mike Harris went into that place, and as a result of his having gone in there the explosion occurred, and his death resulted, and you are reasonably satisfied that that occurred, then the plaintiff could not recover, because of the contributory negligence, on account of the deceased colored man."

Afterwards the court orally charged the jury:

"If the mine was not right, and they knew it, and they went in, they took the risk on themselves and Mike Harris' administratrix could not recover."

The plaintiff reserved exceptions to the foregoing parts of the oral charge. Neither part of it states correctly and properly to the jury the issue between the parties on the plea of contributory negligence which appears in plea 3. In that plea the burden is on the defendant to reasonably satisfy the jury that the fire boss, before the deceased entered the mine, on the morning of the explosion, notified decedent in person that gas existed in dangerous quantities at the place where afterwards the explosion occurred. After this notice, the decedent did negligently go into, or dangerously near to, this place, and this negligent act of decedent after such notice contributed proximately to the cause of his injury. This oral charge fails to

state, if the jury are reasonably satisfied from the evidence, that the fire boss, just before decedent entered the mine, notified him in person, in substance, that gas existed in dangerous quantities in rooms 51 and 52 in eighth north heading in the mine where the explosion afterwards occurred; and it contains other defects in stating the contributory negligence issue to the jury as hereinbefore shown. Authorities supra.

[25] Written charges 5 and 24, requested by the defendant, which were given by the court, should have been refused. They fail to state that the fire boss notified decedent in substance that gas existed in dangerous quantities in rooms 51 and 52; and they may contain other defects. Written charge 13, given for defendant, may be misleading, calling for explanatory charge on the part of plaintiff, but it was not reversible error to give it. Written charge 30 and charge A, asked by the defendant, were given by the court without reversible error, under the evidence and under the general issue plea to the complaint.

[26] The burden of proof under the contributory negligence plea is on the defendant to reasonably satisfy the jury that the fire boss, Tate, notified, in person, the decedent as he entered the mine, on the morning of the explosion, in substance, that "gas exists in dangerous quantities" in these rooms, 51 and 52. This was the prime, and almost the sole, litigated material issue in the case under this plea. Neither the oral charge nor any one of the foregoing given written charges instructed the jury that the burden was on defendant to reasonably satisfy the jury by the evidence that the fire boss notified, in person, the decedent that morning in substance that "gas exists in dangerous quantities" in rooms 51 and 52. The different words used in the oral charge and in the foregoing given written charges, viz., "not to go into that mine or into that work place," or "if the mine was not right and they knew it," or "that there was gas in rooms 51 and 52," or "there was gas in the room where intestate had been working," or "told him not to do so," "not to enter the mine," are not the equivalent, in substance, of the words, viz., "gas exists in dangerous quantities," as used in the plea and statute. Gas may exist in a room and still not be there in dangerous quantities. The trial court did not state clearly and correctly the issue and the burden of proof to the jury, as presented by the contributory negligence plea 3. Authorities supra.

[27] Written charges requested by plaintiff, and refused by the court, numbered by us 1, 2, 3, and 4, were not improperly refused by the court, because the same rules of law attempted to be declared, or that were declared, in each of them, were substantially and fairly given to the jury in the court's oral charge and in plaintiff's given charges, lettered by us C, D, and F. Section 5364, Code 1907, as amended by Acts 1915, p. 815, now section 9509, Code 1923.

Many errors were assigned and argued, on motions to quash the venire, motions in arrest of judgment, based on the venire and the organization of the jury, and on the qualifications of the jurors, and on the introduction and exclusion of evidence on these motions. This case must be reversed for the errors mentioned. These questions may never arise again, as a new and different jury will try the case, and the motions may not be made, and the evidence in all or many respects will be different; so no necessity exists for us to discuss these rulings of the court.

There are other alleged errors assigned and argued; some grow out of rulings of the court on motion for new trial, and motions to exclude arguments to the jury. These matters, if they occur again, will no doubt be presented differently. We see no necessity for discussing and passing on them.

For the errors mentioned, the judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.