[Reynolds v. Woodward Iron Co.]

# Reynolds *v.* Woodward Iron Co.

### Death Action.

(Decided February 15, 1917.   74 South. 360.)

1. **Master and Servant; Injuries to Servant; Actions; Evidence; Sufficiency.**—In an action for the death of a servant killed when he came in contact with an unguarded trolley wire in a mine, the question of the master's negligence held, under the evidence, for the jury.

2. **Master and Servant; Injuries to Servant; Negligence.**—Under Act April 18, 1911 (Laws 1911, p. 536), § 106, declaring that whosoever shall, while under the influence of intoxicating liquor, enter any coal mine, or any of the buildings connected with the operation of the same within the state where miners or other workmen are employed, or whosoever shall carry intoxicating liquors into the same shall be deemed guilty of an offense, there can be no recovery for the death of a coal miner where on the day of his death he entered the mine under the influence of intoxicating liquor, or carried liquor therein, and such acts proximately contributed to the injuries received by him, for the statute was enacted for the benefit of the mine owner and his employees.

3. **Master and Servant; Injuries to Servant; Actions; Instructions.**—In an action for the death of a coal miner killed when he came into contact with an unguarded trolley wire, charges that, if he knew of the presence of the wire at the place where he was working, knew that it was carrying a current of electricity, and that he was liable to be injured or killed if he touched the same, but nevertheless he allowed his head to come in contact with the wire, there could be no recovery are not improper under Employers' Liability Act (Code 1907, § 3910), declaring that the master or employer is not liable if the servant or employee knew of the defect, or negligence, causing the injury and failed within a reasonable time to give information thereof, unless the master or employer already knew of such defect, or negligence, the charges not declaring that deceased's continuance at work amounted to an assumption of risk, but denying recovery only on account of negligence with knowledge of the facts.

4. **Master and Servant; Injuries to Servant; Degree of Care.**—While a master is not required to use the best possible appliances in the conduct of his business, and may show that the appliances adopted and used by him were such as were used by many prudent persons engaged in the same business under like circumstances, that fact does not necessarily exempt the master from liability, and hence a charge that defendant master was not required to exercise the highest degree of care, the measure of duty being to use such appliances as were used by persons of ordinary care in the same business, was erroneous.

Mayfield and Sayre, JJ., dissenting.

APPEAL from Birmingham City Court.
Heard before Hon. JOHN H. MILLER.

[Reynolds v. Woodward Iron Co.]

Action by Minnie Reynolds, as administratrix, against the Woodward Iron Company, for damages for the death of her intestate. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The facts, as well as some of the written charges refused to defendant, sufficiently appear. The following charges given to defendant need to be set out:

(10) If you are reasonably satisfied from the evidence that deceased knew of the presence of the trolley wire at the place where he was working, and knew that said trolley wire was carrying a current of electricity, and that if he touched the same, he was apt or liable to be injured or killed, and that nevertheless plaintiff's intestate negligently allowed his head to come in contact with said wire, as a proximate result of which he received the injuries from which he died, then you cannot find for plaintiff under the third count of the complaint:

(11) Same as 10, except that it concludes: "Then your verdict should be for defendant."

(13) If you believe from the evidence that said trolley wire, and the fact that it was carrying a current of electricity, were open to ordinary observation, and that plaintiff's intestate knew of the location of said wire and the fact that it was carrying electricity, and that plaintiff's intestate further knew that if he came in contact with or touched said wire, he was apt or liable to be injured or killed, and that nevertheless plaintiff's intestate negligently did touch said wire, as a proximate consequence of which he received the injuries from which he died, then your verdict must be for defendant.

McQueen & Ellis and Allen, Bell & Sadler for appellant. Cabiniss & Bowie for appellee.

THOMAS, J.—Plaintiff's intestate was employed in the coal mines of the defendant company, and while so engaged met his death by coming in contact with a trolley wire, which transmitted electric current to propel the tram cars, conveying coal and timbers between the various passages in the mine and the surface. Count 1 of the complaint as amended was for failure to furnish plaintiff's intestate a reasonably safe place to work, and the second and third counts were, respectively, under the first and second subdivisions of the Employers' Liability Act

(Code 1907, § 3910). The defendant replied in short by consent the "general issue, with leave to give in evidence any matter that might be specially pleaded, and with like leave to the plaintiff to give in evidence any matter that might be specially replied." There was judgment for the defendant.

(1) The evidence of plaintiff showed that the room in which deceased, John Reynolds, worked (room No. 12), was at the tenth right heading; that a tram track, over which defendant operated its cars in said business, was laid along this heading from the surface of the earth to and beyond said room; that by means of a switch situated in the heading, a car could pass along the main line into the room; that by "slewing" the front end of the car over to the right and the rear end of the car to the left, just above the switch, the flange on the front wheel would be made to catch on the track leading into room 12, and thus guide the car therein; that over the left-hand rail of the tram track (facing down the mine), and 4 feet $7\frac{1}{2}$ inches above the rail, and about 6 inches to the left of that rail, was the trolley wire, on which moved the trolley pole of the motor by which the car was operated; that this wire carried 250 volts of electricity, alternating current, and that there were no guards over it. Plaintiff's evidence tended to show that the usual and customary way to "slew" a car into the room was for one man to stand to the front, on the left, of the car, and push the front to the right, and another man to stand to the rear, on the right, and push the rear end to the left. The evidence for the defendant tended to show that the usual and ordinary way to get the car into the plaintiff's intestate's room was to stand immediately in front of the car and slew it, and then come around the right of the car, to the rear, to do the pushing. Defendant's evidence further tended to show that the usual, customary, and safe way, after leaving the front of the car, was to go on the opposite side (of the car) from the side on which the trolley wire was located (the side furthest from the wire); that plaintiff's intestate did not attempt to go by this way, but went by the side on which was located the trolley wire. On the occasion of the injury, deceased and Hawkins were working in room No. 12; they were needing timbers for props, which timbers had been loaded on a tram car, and the car brought and stopped, as required, above said switch leading into their room. It was then the duty of deceased and Hawkins to slew the car and push it into their room. Plaintiff's

account of the conduct of deceased immediately before, and when injured, was that: "Deceased went to the immediate front of the car, and John Hawkins had hold of the right-hand rear bumper, and in such positions they slewered the car in position to be pushed into room No. 12, and to assist in the pushing of the car deceased quit his position the front of the car and walked around *the left of the car on the side where the trolley wire was,* and after he had about reached the left rear bumper   \*   \*   \* and was crossing under the trolley wire, his head came in contact with the trolley wire," and he was killed.

Defendant's version of how the injury occurred was that after leaving the front end of the car, deceased went on the wrong side of the car, thereby having to pass in close proximity to the trolley wire; that just as he passed under the wire, after he had reached the rear end of the car, he raised his head and struck the wire, and was killed; that some hours before intestate was killed "he had drunk some whisky, which he had carried into the mine with him, and felt a little happier than usual, but continued his work in the regular way." The evidence was in conflict as to whether the mine inspector had called the attention of the defendant's mine superintendent to the fact that the wire was dangerous in its then condition. It is without dispute, however, that at least two coal mining companies in the Birmingham district had provided shields for trolley wires situated as was the one complained of, though there were many well-conducted coal mines operated in that district that had and maintained wires "in the same manner and under the same conditions as the wire" that caused deceased's death; that is to say, without guards over or along the trolley wire to prevent contact therewith. There was no evidence that deceased informed defendant of the condition of said trolley wire. But the evidence showed that the defendant knew of its condition, having installed the wire some weeks previously, and that it was in the same condition when deceased was killed that it was in when installed. The evidence further showed that it was not the duty of the deceased to repair or remedy any defective condition of the trolley wire, and that he did not cause the condition in which the wire was installed, or in which it was maintained at the time of his death. The location of the wire was open to ordinary observation; and the fact that it carried a current of electricity, and that any one who touched the wire would receive an electric shock and be injured, was generally known

and understood by the men working in the mine.   The several
charges given at defendant's request are assigned as error.   Un-
der the evidence the question of liability vel non was properly
submitted to the jury.   While the master is not required to use
the best possible appliances in the conduct of his business, and he
may show that the appliances adopted and used by him are such
as are adopted and used by many prudent persons engaged in the
same business under like circumstances, "yet this fact does not
necessarily exempt the employer from liability.   Prudent persons
may do imprudent things and may fail to use proper appliances."
—*Prattville Cotton Mills Co. v. McKinney,* 178 Ala. 568, 59
South. 498, 502; *Davis v. Kornman,* 141 Ala. 479, 37 South. 789;
*L. & N. R. R. Co. v. Allen's Adm'r,* 78 Ala. 494; 6 Mayf. Dig. 585;
*Hough v. Railroad,* 100 U. S. 213, 25 L. Ed. 612; *Wabash R. R.
Co. v. McDaniels,* 107 U. S. 459; 2 Sup. Ct. 932, 27 L. Ed. 605.   In
the *Allen Case, supra,* the court said 78 Ala. 503:   "We conceive
the correct and just rule to be that a railroad company's duty to
its employees does not require it to adopt every new invention
or appliance useful in its business, although it may serve to di-
minish risks to life, limb, or property, incident to its service.   It
is sufficient fulfillment of duty to adopt such as are ordinarily in
use, by prudently conducted roads engaged in like business, and
surrounded by like circumstances."

Likewise in *Richmond & Danville Railroad Co. v. Bivins,*
103 Ala. 147, 15 South. 515, it was declared that:   "It is regarded
as a sufficient fulfillment of the company's duty, to adopt such
[machinery] as is in ordinary use by prudently conducted roads
engaged in like business and surrounded by like circumstances."
—*Wilson v. L. & N. R. R. Co.,* 85 Ala. 272, 4 South. 701; *L. & N.
R. R. Co. v. Jones,* 83 Ala. 382, 3 South 902; *Ga. Pac. R. R. Co.
v. Propst,* 83 Ala. 518, 3 South. 764; *R. & D. R. R. Co. v. Jones,*
92 Ala. 225, 9 South. 276; *L. & N. R. R. Co. v. Hall,* 87 Ala. 719,
6 South. 277, 4 L. R. A. 710, 13 Am. St. Rep 84; *A. G. S. R. R.
Co. v. Arnold,* 84 Ala. 171, 4 South. 359, 5 Am. St Rep. 354.

Of the rule, thus early announced by our court in the *Allen*
and *Propst Cases,* Chief Justice ANDERSON said (*Caldwell-Wat-
son Co. v. Watson,* 183 Ala. 334, 335, 62 South. 859, 863):   "We
think the holding means, where evidence is shown that the ways
and works of the defendant are unsafe, or insufficient, that proof
that similar instruments are generally used by other prudent
persons engaged in similar calling is evidence in rebuttal, and

might influence the jury in holding that there were no negligence, but such proof would not, as matter of law, conclusively show that there was no negligence in the selection or use of such machinery or instrumentality."

The charges condemned in *Caldwell-Watson Co. v. Watson, supra,* and *Davis v. Kornman, supra,* were different in effect from charges 22 and 26, given in the instant case at defendant's request, and no error was committed in giving these charges.

(2) Charge 21 is as follows: "If the jury believe from the evidence that plaintiff's intestate on the day of his death entered into defendant's mine while under the influence of intoxicating liquor, or carried intoxicating liquors into the mine, and that by so doing said intestate proximately contributed to the injuries sustained by him, you must find for the defendant."

By section 106 of the act of April 18, 1911, it is provided that: "Whoever shall, while under the influence of intoxicating liquor, enter any coal mine, or any of the buildings connected with the operation of the same, within this state, where miners or other workmen are employed, or whoever shall carry intoxicating liquors into the same, shall be deemed guilty of an offense against this act, and upon conviction shall be punished accordingly."— Gen. Acts 1911, pp. 500, 536.

The evidence was undisputed that plaintiff's intestate did go into defendant's mine, where other workmen were employed, in this state, under the influence of intoxicating liquor. Intestate was therefore guilty of violating this provision of the act in question. If this violation of the statute proximately caused, or was a contributing cause of, the injury complained of, why may not such violation of the act be pleaded as contributory negligence?

In *Watts v. Montgomery Traction Company,* 175 Ala. 102, 57 South. 471, it was held that the violation of a statute or of an ordinance is negligence per se, and that a person proximately injured thereby may recover for such injuries, against the violator of the ordinance. On the question now before us the court said: "We are not cited to and have found no Alabama case where the violation of a statute or ordinance by the injured party was pleaded by the defendant by way of contributory negligence, yet we see no reason why such a violation, if proximately causing the injury complained of, cannot be set up as a defense to the simple negligence charged in the complaint. Such a defense has

been approved, and we think properly so, in the cases of *Broschart v. Tuttle,* 59 Conn. 1, 21 Atl. 925, 11 L. R. A. 33; *Weller v. Chicago R. R.,* 120 Mo. 635, 23 S. W. 1061 [25 S. W. 532]. The statute or ordinance violated, however, must have been enacted for the benefit of the party who seeks to invoke its violation as distinguished from the public generally or a class to whom the ordinance necessarily applies."—*L. & N. R. R. Co. v. Murphree,* 129 Ala. 432, 29 South. 592; *Cent. of Ga. Ry. Co. v. Sturgis,* 149 Ala. 573, 43 South. 96.

This doctrine was approved in *Armstrong v. Sellers,* 182 Ala. 582, 62 South. 28.

The statute violated in the instant case, making it a misdemeanor to enter any coal mine under the influence of liquor, or to carry intoxicating liquors into the same, was enacted for the benefit of the mine owner and of his employees, as distinguished from the public generally. This statute may therefore be invoked as a defense to the charge of simple negligence, if its violation proximately caused the injury complained of. This issue was properly submitted to the jury in given charge 21.

(3) Assignments of error 4, 5, and 6 are based on the giving, at defendant's request, of written charges 10, 11, and 13. In *Burnwell Coal Company v. Setzer,* 191 Ala. 398, 405, 67 South. 604, 606, it is said, of the concluding words of section 3910 of the Code (page 602), that: "The only effect of the addition [there italicized] to the statute was to remove as a basis of *assumption of risk* and of *contributory negligence* on the part of an employee, in respect of a defective condition within the purview of the first subdivision of the Liability Act (section 3910), the remaining in service after knowledge by the employee, injured in consequence of the defect in condition to which the complaint or a count thereof attributed the injury for proximate cause, of the defect in condition of the ways, works, machinery, or plant of the master, except in cases where the employee injured was under the duty to remedy the defect causing his injury, or where the employee injured committed the negligent act causing the injury complained of."

See, also, on this statute *Standard Portland Cement Company v. Thompson,* 191 Ala. 444, 67 South. 608; *Clinton Mining Co. v. Bradford,* 192 Ala. 576, 69 South. 4; *Sloss-Sheffield Co. v. Stapp,* 195 Ala. 340, 70 South. 267; *A. G. S. R. R. Co. v. Taylor,* 196 Ala. 37, 71 South. 676.

[Reynolds v. Woodward Iron Co.]

The effect of the proviso to section 3910 is to relieve the servant from the imputation of contributory negligence or assumption of risk predicated on the fact of his remaining in the service after knowledge of the defect or negligence, in an action by an employee who did not commit the negligent act causing the injury, and upon whom the duty to remedy the defect did not rest; but it does not relieve such employee of the duty to give information of such defect or negligence, when he knows of it and the master or superior employer has no notice or knowledge thereof.

Given charges 10, 11, and 13 were not predicated upon plaintiff's intestate's assumption of risk, nor upon his contributory negligence *in remaining in the employment of the defendant after knowledge of the defect or negligence* that subsequently caused his death, but upon the fact that, with full knowledge of the situation (of the danger of coming in contact with the trolley wire charged with electric current), he negligently touched the same or allowed his head to come into contact therewith, thereby receiving his fatal injury.

Under the issues presented, and the evidence thereon, these charges were properly given at defendant's request.

The judgment of the lower court is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.

### ON REHEARING.

THOMAS, J.— (4) The majority of the court are of the opinion that reversible error was committed in the giving by the trial court of the defendant's written charge 26; that the charge was contrary to the rule declared in the cases of *Davis v. Kornman; Prattville Cotton Mills Co. v. McKinney*, and *Caldwell-Watson Co. v. Watson, supra.* See, also, discussion of the question in *Wiita v. Interstate Iron Co.*, 103 Minn. 303, 115 N. W. 169, 16 L. R. A. (N. S.) 134.

The application for a rehearing is granted. The judgment of affirmance heretofore rendered in this court is set aside and vacated, and the judgment of the city court of Birmingham is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and MCCLELLAN, SOMERVILLE, GARDNER, and THOMAS, JJ., concur. MAYFIELD and SAYRE, JJ., dissent.

[Reynolds v. Woodward Iron Co.]

MAYFIELD, J.—I dissent for the reason that I believe the court has either misread or misconstrued a charge held bad. This charge reads as follows:

"(26) The defendant was not required to exercise the highest degree of care, nor to use the appliances that were in use by only those exercising a very high degree of care. The measure of duty that defendant owed to plaintiff's intestate was to use such appliances as were used by persons of ordinary care and prudence in the same line of business."

This charge is not only practically, but literally, taken from the law books on the subject; and all the law books, English and American, that have written on the subject, coincide to the soundness of such an instruction. Our own reports contain charges couched in the exact language used in the charge in question, and in the decisions these are held to state correctly the law on the subject. How is it, then, that it was error to give the charge here under consideration? Even if abstract, it would not have been reversible error to give it.

This was an action by a servant against his master for injuries received, alleged to have been in consequence of unsafe ways, works, machinery, or appliances; hence I do not see how the charge can be abstract. If the instruction had been of the nature or character of those which requested or authorized a finding one way or the other, provided the master had used the diligence or care required of him in the instruction, then it might have been misleading, or even erroneous; but it did not do this, neither does it belong to that class of charges or instructions. It belongs to that class of charges which merely states propositions of law applicable to the case on trial. In this case the jury might believe that the master, the defendant, had complied with the law as stated in this charge—and, for that matter, in all the law books on the subject of the propositions stated in the charge—and yet believe and find for the plaintiff. The charge gives no intimation to the jury as to how they should find touching this proposition or any other involved in the case. The authorities on the subject, cited in the opinion in this case, and all the text-books dealing with the subject, will show that this charge asserts a correct proposition of law, and that it is literally taken from the books, if you change the words "plaintiff" and "defendant" to 'servant" and "master," or "employee" and "employer," respectively, where they occur. I have never before seen the law

stated in this charge as I read it doubted or criticised, much less held to be erroneous.