(80 South. 454)

### CONNORS–WEYMAN STEEL CO. v. KILGORE et al. (7 Div. 958.)

(Supreme Court of Alabama. Nov. 28, 1918.)

1. MASTER AND SERVANT ⊚═284(2)—RELATION—QUESTION FOR JURY.

In an action for personal injuries sustained in a mine, whether the person under whom plaintiff was working was an independent contractor, employé, or a lessee of the mine owner, *held* for the jury.

2. MASTER AND SERVANT ⊚═278(1)—INJURIES TO SERVANT—NEGLIGENCE.

In an action by a servant for personal injuries, if the evidence be equally consistent with the existence and the nonexistence of the negligence charged, the plaintiff should not recover.

3. MASTER AND SERVANT ⊚═278(10)—SAFE PLACE TO WORK—MINES—EVIDENCE.

Testimony to the effect that well-regulated mines had a derailing switch to keep the cars from running back into the mines *held* insufficient to show that the owner of a mine was negligent in providing or maintaining a hickory or oak pole across the entry of a mine, instead of a derailing switch or other device.

4. MASTER AND SERVANT ⊚═105(1)—DUTY TO SERVANT—MACHINERY AND APPLIANCES.

The duty of a mine owner to its servant is only to discontinue old, insecure methods, and to adopt such improvements and advancements as are in ordinary use by prudently conducted mines engaged in like business and surrounded by like circumstances.

Appeal from Circuit Court, Shelby County; Lum Duke, Judge.

Suit by Peggy Kilgore and others against the Connors-Weyman Steel Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Cabaniss & Bowie, of Birmingham, and Leeper, Haynes & Wallace, of Columbiana, for appellant.

W. A. Denson, of Birmingham, for appellees.

THOMAS, J. The suit was for personal injury.

In the first trial of this cause there were counts alleging that plaintiffs' intestate was an employé of defendant, that his death was caused by the negligence of defendant in failing to provide a safe place of .work, negligence of a superintendent, and the negligence of the defendant in failing to provide suitable mine cars and in failing to provide safe means to prevent mine cars from running back into the mine. There was also count A, in which it was alleged that plaintiffs' intestate was at work in defendant's mine as an employé of one Sicard, who had a mining contract with defendant to mine coal for it;

that intestate was in the mine by invitation when he came to his death by reason and as a proximate consequence of the negligence of defendant in failing to provide "a derailing switch near the mouth of said mine."

All the counts were eliminated by action of the court, except count A, and the trial was had on count A.

The judgment rendered by the lower court on said trial was reversed on appeal, it being here held that the complaint showed Sicard to be an independent contractor, and that under the evidence there was no liability on defendant's part. Connors-Weyman Steel Co. v. Kilgore, 189 Ala. 643, 66 South. 609.

On the second trial, plaintiffs withdrew all counts except that numbered 2, the gravamen of which was the negligence of the defendant in failing to provide plaintiffs' intestate, while engaged in the active duty of his employment by defendant, a reasonably safe place in which to perform the duties of his employment. Defendant pleaded the general issue, and special pleas averring that the mine was operated by Sicard under a written contract between him and defendant, a copy of which was set out. The evidence was not identical on the two trials. There was a verdict for plaintiffs on second trial.

Defendant moved for a new trial on grounds assigned and on the further ground that the verdict was contrary to the evidence.

Looking to the phase of the evidence tending to show that plaintiffs' intestate was killed by the coal car in question while engaged in the discharge of the duties of his employment, we are of opinion that the evidence warranted a reasonable inference to be drawn that such was the fact.

There was evidence to warrant the submission of the issue whether Connors-Weyman Steel Company, as owner, or Adrian Sicard, as lessee, was operating the mine of defendant at the time of the homicide. The evidence tended to show that plaintiffs' intestate received payment for his earnings in "pay slips" with the name of Connors-Weyman Steel Company thereon, or in such company's "pay envelopes"; that one Stevens was discharged by Mr. Connors, or by Mr. Sicard at the request or instance of Mr. Connors, who was at the time the president of said company; and that in letters written by that company about the mine and its operation, to the chief mine inspector, two or three months after the accident that caused intestate's death, references were made to "our mine" and to "our superintendent"; and that at the time of the injury, and when these letters were written, Mr. Sicard was operating the mine either as lessee or as the superintendent for Connors-Weyman Steel Company.

[1] Under the reasonable inferences to be drawn from such evidence, the issues of mas-

---

⊚═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ter and servant, employer and employé, and lessor and lessee vel non, were properly submitted to the jury. Amerson v. Corono Coal & Iron Co., 194 Ala. 175, 69 South. 601; Nashville, C. & St. L. Ry. v. Crosby, 194 Ala. 338, 70 South. 7; Crandall-Pettee Co. v. Jebeles & Colias Conf. Co., 195 Ala. 152, 69 South. 964; Louisville & N. R. Co. v. Jenkins, 196 Ala. 136, 72 South. 68; Morrison v. Clark, 196 Ala. 670, 72 South. 305.

The case of Oden-Elliott Lumber Co. v. Rowe, 77 South. 552,[1] is not contrary to this holding. There, the evidence clearly showed that Oden-Elliott Lumber Company, a "corporation," was not engaged in "active business of any kind" at the time in question, but that Oden-Elliott Lumber Company, a "partnership," then carried on the business formerly conducted by the corporation of the same name. Held, that the affirmative charge was properly refused to the partnership, and properly given at the request of the body corporate of identical name.

The complaint alleged that defendant was guilty of negligence which proximately contributed to the death of plaintiffs' intestate. Was the burden of such proof discharged by plaintiffs?

It is conceded that at the Eureka mine there was no "derailing switch," and that there was nothing within the mine to keep the cars from running back; that the obstruction used for such purpose was an oak or hickory pole placed at the mouth of the mine, where derailing switches are sometimes located.

It is insisted by defendant that the evidence shows that at the time of the injury there was a better device used at the mine in question, to prevent loose cars from running back therein—"a large piece of hickory or oak about six inches in diameter, that was placed there to keep the cars from going back;" that "they put that stick across the opening [the mouth of the mine];" that it would have "to be removed before the cars went down" in the mine. such was the effect of the testimony of witnesses Connors and Hudson. Of this the latter testified:

"They used a bar at the mouth of this mine. I think it was a hickory pole of some kind. I don't remember what kind of pole it was. It was a pole put across there. Just a heavy pole put across the mouth of the mine. Before the cars went into the mine, the pole had to be removed. I couldn't say if it was removed before the cars started in the mine or afterwards, because I worked inside of the mine. I have seen the cars enter the mine; certainly they removed the pole before the cars started. I have been working in coal mines 25 years. I have been working at different mines during that time. I have worked at a dozen or more different coal mines. I have worked in some as good mines as any in the state. Certainly, at well-regulated mines they have a derailing switch to keep the cars from running back into the mine."

The mere possibility that defendant's negligence in this, or in some other matter, caused the injury, is not sufficient to support the verdict. Under the evidence, the hickory or oak pole provided to be and remain across the mouth of the mine, unless entry to the mine was deliberately sought, was, when in place, reasonably safe and sufficient for the purpose of obstructing the entrance of cars. The evidence does not inform us how the car in question entered the mine—whether by reason of a defect in the pole, in that it was insufficient to sustain the weight and force of a runaway car, or whether the car was intentionally or properly admitted to the mine by the removal of said obstruction. It is silent on this point, not even affording reasonable inferences.

[2] If the evidence be equally consistent with the existence and the nonexistence of the negligence charged, it is not competent for the judge to leave the matter with the jury, for the plaintiff affirming negligence in such a case has failed to establish it. Koger v. Roden Coal Co., 197 Ala. 473, 73 South. 33; Scales v. C. I. & C. Co., 173 Ala. 639, 55 South. 821; Bailey, Pers. Inj. § 1660.

[3] The evidence does not show that the defendant was negligent in providing or maintaining the hickory or oak pole across the entry of the mine, instead of a derailing switch or other device thereat, to turn aside runaway cars or to prevent the unintended entry of cars into the mine. There is nothing to show that the death of intestate would not have occurred as and when it did, had such other device been installed and in use at this mine on the occasion of his injury. The burden of proof rested on plaintiffs to show, by an unbroken sequence of cause and effect, that the negligence alleged was the proximate cause of the intestate's injury and death. Koger v. Roden Coal Co., supra; Scales v. C. I. & C. Co., supra; Creola Lumber Co. v. Mills, 149 Ala. 474, 485, 42 South. 1019; Richards v. Sloss-Sheffield Co., 146 Ala. 254, 41 South. 288; Reiter-Connolly Mfg. Co. v. Hamlin, 144 Ala. 192, 40 South. 280; Decatur Car Wheel & Mfg. Co. v. Mehaffey, 128 Ala. 242, 29 South. 646; L. & N. R. Co. v. Quick, 125 Ala. 553, 561, 562, 28 South. 14; Western Railway of Alabama v. Mutch, 97 Ala. 194, 196, 11 South. 894, 21 L. R. A. 316, 38 Am. St. Rep. 179.

[4] Moreover, an employer need not adopt machinery and appliances of any particular kind and character, nor provide "the best and safest to be had," nor employ "every device," although greater immunity from danger would be thereby assured. L. & N. R. Co. v. Hall, 193 Ala. 648, 654, 69 South. 106; L. & N. R. Co. v. Andrews, 171 Ala. 200, 54 South. 553; L. & N. R. Co. v. Hall, 91 Ala. 112, 8 South. 371, 24 Am. St. Rep. 863; L. & N. R. R. Co. v. Allen's Adm'r, 78 Ala. 494.

[1] 201 Ala. 128.

As to this, the duty is only to discontinue old insecure methods, and to adopt "such improvements and advancements as are in ordinary use" by prudently conducted mines engaged in like business and "surrounded by like circumstances." R. & D. R. Co. v. Jones, 92 Ala. 218, 225, 9 'South. 276; L. & N. R. R. Co. v. Hall, supra; Reynolds v. Woodward Iron Co., 74 South. 360;[2] R. & D. R. Co. v. Bivins, 103 Ala. 142, 147, 15 South. 515. That is to say, the master owes his servants and employés the duty to supply appliances reasonably suitable for the purposes in view, and in the selection of which reasonable care and skill has been exercised. Reynolds v. Woodward Iron Co., supra; L. & N. R. R. Co. v. Hall, supra; Caldwell-Watson F. & M. Co. v. Watson, 183 Ala. 326, 335, 62 South. 859.

Though the witness Hudson did testify that well-regulated mines had a derailing switch to keep the cars from running back into the mines, such evidence falls short of showing that prudently conducted mines in that locality, engaged in like business, circumstanced as was defendant's mine at the time of the injury, used a derailing switch, rather than an oak or hickory pole, to discharge the important service in question as to loose or runaway cars. Reynolds v. Woodward Iron Co., supra.

The judgment of the circuit court is reversed, and the cause is remanded for failure to give the affirmative charge requested by defendant.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.