146 So. 602

## ALABAMA POWER CO. v. BRYANT.

### 4 Div. 682.

Supreme Court of Alabama.

Jan. 19, 1933.

Rehearing Denied March 9, 1933.

252

O. S. Lewis, of Dothan, and Halstead & Halstead, of Headland, for appellee.

Martin, Thompson, Turner & McWhorter, of Birmingham, and R. W. Miller, of Abbeville, for appellant.

FOSTER, Justice.

Appellant seems to be content to ground its right to reversal principally on its claim of error in denying the affirmative charge.

It is an electric utility, distributing such service to consumers, and has a distribution system for that purpose. Plaintiff's intestate was a resident of plaintiff's home thus served by defendant. During a thunderstorm she was killed by a stroke of lightning while sitting under an electric drop light. The circumstances were such that the jury could infer that lightning, or atmospheric electricity, was conducted into the house by defendant's service line.

Assuming such to be true, defendant's contention is that because its evidence showed, without conflict, that its devices and safeguards were suitable and constructed according to the usage of such prudently conducted enterprises, the question is one of law, and was improperly submitted to the jury. The proposition embraces the two ideas—proper devices and appliances, and their proper location and adjustment so as to minimize the danger of such occurrences.

■ There is a duty owing by defendant to its customers to use due care in the selection, construction, and operation of its appliances and system, and to use such known and approved appliances as are necessary to guard against such accidents. Alabama Power Co. v. Farr, 214 Ala. 530, 108 So. 373; 20 Corpus Juris, 344; 45 Corpus Juris, 706; Ala. City, G. & A. R. Co. v. Appleton, 171 Ala. 324, 54 So. 638, Ann. Cas. 1913A, 1181; 1 Joyce on Electric Law, 445 b and 445 d.

■ The general rule is adopted by this court that evidence that certain appliances were generally used by other prudent, well-regulated business enterprises of a similar character is admissible upon the question of due care by defendant in that regard, but is not a conclusive test of the measure of such duty. Its use of the appliances and methods of other such enterprises "does not necessarily exempt the employer from liability," nor is it always required to use such appliances and methods to discharge its duty in respect to them. Caldwell-Watson Foundry & Machine Co. v. Watson, 183 Ala. 326, 334, 335, 62 So. 859; Reynolds v. Woodward Iron Co., 199 Ala. 231, 235, 236, 74 So. 360; Going v. Alabama Steel & Wire Co., 141 Ala. 537 (12), 37 So. 784; Connors-Weyman Steel Co. v. Kilgore, 202 Ala. 372, 80 So. 454; Prattville Cotton Mills Co. v. McKinney, 178 Ala. 554. 568, 59 So. 498; Davis v. Kornman, 141 Ala. 479 (14), 37 So. 789.

■■ But the rule is general, and has been specifically applied to the duty owing by defendant under the circumstances of this case. that it must "exercise * * * such reasonable precautions as a man of ordinary care and prudence would exercise in respect of such a dangerous agent" to avoid the conduction "along the wires and into houses * * * of atmospheric electricity," and "to employ devices and appliances to that end." Southern Bell Tel. & Tel. Co. v. McTyer, 137 Ala. 601, 34 So. 1020, 1023, 97 Am. St. Rep. 62; Alabama Power Co. v. Farr, supra.

Such question is ordinarily for the jury. Curtis on Electricity, p. 681.

Plaintiff's electric service was from a set of secondary wires extending from a pole a little to the north of the front of his house, situated on the east side of the street, and was at the end of such service line. The transformer which stepped down the voltage was on the third pole extending north, from which the secondary lines extended both north and south, for domestic service on both sides of the street. At the transformer there were automatic fuse cut outs, a lightning arrester, and a ground wire, all connected to the primary, or high-voltage, wires. There was a. ground wire on the next pole north connected to the secondary system, but none south toward plaintiff's house. The next secondary ground wire north of the pole, grounded as above described, was on the sixth pole from it, and on every sixth pole of the secondary service. The ground wires were connected to the neutral (not hot wires) of the three secondary lines, which neutral was tied into the neutral of the town system.

The witnesses testified that such appliances and their plan of construction were such

as were generally used by well-regulated utilities engaged in such business. Some of them also testified that they show every reasonable device and appliance to reasonably protect a consumer against lightning that may come in contact with the secondary lines. They agree that there is no absolute protection against the effect of lightning directly striking the wires. But grounds on the poles connected to the secondary system all tend to lessen the effect, and that if it hits near such ground wire it tends to take off the shock there as well as at the other such ground wires.

There was evidence that at least every fourth or fifth pole on the system should be grounded; that as constructed everything had not been done to protect a customer from lightning, because every pole could be grounded; that if the two poles nearest plaintiff's house had been thus grounded on the secondary system, and lightning had struck the neutral wire, it probably would have gone to the ground, and at least decreased the severity of the shock in the house; but that it is not customary to put a ground on each of such poles connected to the secondary system.

■ Knowing that though there is no absolute protection against the effect of a lightning stroke on the wires of the system, but that a ground wire on a pole nearest to the service to the customer will tend to decrease and lessen the effect of such a dangerous occurrence, with a duty to exercise ordinary care and prudence to avoid the conduction of atmospheric electricity, and with no dispute but that the three poles next to such service to plaintiff had no ground for its secondary system, and that the jury could find that the secondary wires conducted atmospheric electricity into plaintiff's house, and caused the death of plaintiff's intestate, we will not say that the evidence was without reasonable inference that defendant did not exercise due care to protect plaintiff's residence from such atmospheric electricity as might be expected to charge its secondary wires. This is in view of the law that it does not absolve defendant as matter of law from such result because it has adopted the appliances and methods of well-regulated enterprises of the same nature.

■ But the question of whether the affirmative charge was due defendant involves still another inquiry. There must not only have been a finding that defendant was negligent in not using the proper method of construction, or proper appliances, but that such failure was the proximate cause of the accident to plaintiff's intestate. For if such construction or appliances would not ordinarily have prevented the death of the intestate, or at least a dangerous injury, the failure in that respect would not have been the proximate cause of such accident. Assuming that there

was negligence in respect to the construction and equipment and operation of its system, we are now led to inquire whether it was open to the jury to find that the lightning would not have caused the death of plaintiff's intestate had defendant done its full duty to protect her from such danger.

■ We have said that all the witnesses agree that nothing which defendant could have done would absolutely protect its customer from the effects of lightning directly striking its wires. It must use proper precaution, but all agree that if such precaution is used there is an inherent danger which the customer must assume. Southern Bell Tel. & Tel. Co. v. McTyer, supra. But the customer does not assume the consequences of a neglect by defendant to perform its duty.

■ We have a well-defined rule that the burden is upon "plaintiffs to show by an unbroken sequence of cause and effect, that the negligence alleged was the proximate cause of the intestate's injury and death." Connors-Weyman Steel Co. v. Kilgore, 202 Ala. 372, 80 So. 454, 455. For when "the evidence leaves it uncertain as to whether the cause of the injury was something for which defendant was responsible, or something for which it was not responsible, there is a failure of proof, and the jury cannot be permitted to guess at the real cause." Carlisle v. Central of Georgia R. Co., 183 Ala. 195, 62 So. 759. And "the mere possibility that the negligence of defendant caused the injury without evidence thereof, is not sufficient to carry the case to the jury, or to support a verdict." Koger v. Roden Coal Co., 197 Ala. 473, 73 So. 33. And "where it was merely conjectural whether death of a servant resulted from negligence for which the master was liable or from other cause, there can be no recovery." St. Louis & S. F. R. Co. v. Dorman, 205 Ala. 609, 89 So. 70.

And "where the testimony leaves the matter uncertain and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause." American Cast Iron Pipe Co. v. Landrum, 183 Ala. 132, 62 So. 757, 758.

■ And the presumption of negligence from the doctrine of res ipsa loquitur, when available, has no application to *proximate cause*, and does not dispense with proof that the accident was the proximate result of the act or omission of defendant. 45 Corpus Juris, 1212, §§ 779, 780.

■ But there is also authority for the statement, which we approve, that "if the circumstances surrounding the accident render it more probable that the injury was due

to the negligence of defendant than otherwise," and though all possible circumstances which would excuse defendant do not appear, the question may be left to the jury on the issue of proximate cause. 45 Corpus Juris, 1213 (8). The same authority also shows that if it could with equal reasonableness and consistency be inferred that the accident was due to other causes than defendant's neglect, the doctrine cannot be invoked. So that in determining the question, the jury may infer that that which was probable, rather than that which was merely possible, was the proximate cause.

While the evidence shows that there is no way to provide absolute protection against the effect of a direct stroke of lightning, the question now is whether it was probable, and therefore reasonably inferable, that if the secondary wire on the pole nearest to plaintiff's residence had been grounded, the accident would not have occurred. On that subject, defendant's witness Ivey testified, as shown on page 25 of the transcript, that "if there had been a ground on the first pole from Mr. Bryant's house and lightning had struck between the first and second poles on the secondary system and had hit the neutral wire, it would probably have gone to the ground." Fouyroy, a witness for defendant, testified, as shown on page 28, "If there had been a ground there it would have had the effect to at least decrease the severity of the electricity placed on the wires by lightning," and that "where the lightning comes in contact with the wire it will go to the nearest ground." Robinson, for defendant, testified that there is no absolute or sure protection against the effect of "a direct hit of lightning if it hits the system; even a few feet away I still say there is no protection; get fifty feet away I think you have some means of protection and that is by conductors." Also, that "if lightning had struck north of it (that is the pole with a ground on it) and away from that pole that ground would have done its best to discharge and train some of the lightning down; that is one of the main things a ground is for."

In the case of Alabama Power Co. v. Farr, supra, the court held that the jury could find that the proximate cause of the death of plaintiff's intestate was the failure to safeguard its wire line with available appliances and devices, such as ground wires.

We have examined the original record and evidence in that case, and it is quite similar in the essentials now under consideration to that in this case.

The evidence in this case further permits of a reasonable inference that the atmospheric electricity was carried into plaintiff's residence by its secondary lines, and that the other customers of defendant who received service from the same lines south of the ground wire connected to the secondary lines

had a shock from the same stroke, apparently conducted by the same set of secondary lines; but there is no evidence of such effect north of the grounded pole.

■ Our judgment is that from the evidence a jury could find that it was probable that if defendant had grounded its secondary lines in front of plaintiff's residence, the accident would not have occurred, and that it was proximately caused by such failure. The affirmative charge was refused to defendant without error.

Other refused charges were either covered by the court in his oral charge or do not assert correct legal principles and need no further comment.

We have considered all the assignments insisted on by appellant, and find no reversible error.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

### On Rehearing.

FOSTER, J.

In a most respectful way counsel for appellant have earnestly urged a reconsideration of our statement that the use of appliances and methods in general use by other well-regulated enterprises of the same sort is not a test of due care, in that, we thereby depart from the principle of the following cases: Louisville & Nashville R. Co. v. Allen's Adm'r, 78 Ala. 494; Georgia Pac. Ry. Co. v. Propst, 83 Ala. 526, 3 So. 764; Richmond & D. R. Co. v. Jones, 92 Ala. 218, 9 So. 276; Louisville & N. R. Co. v. Hall, 87 Ala. 708, 6 So. 277, 4 L. R. A. 710, 13 Am. St. Rep. 84; Louisville & Nashville R. Co. v. Hall, 91 Ala. 112, 8 So. 371, 24 Am. St. Rep. 863; Louisville & Nashville R. Co. v. Hall, 193 Ala. 648, 69 So. 106; Connors-Weyman Steel Co. v. Kilgore, 202 Ala. 372, 80 So. 454; Reynolds v. Woodward Iron Co., 199 Ala. 231, 74 So. 360.

If we did fall into an error in so doing, we merely followed the opinion in Caldwell-Watson F. & M. Co. v. Watson, 183 Ala. 326, 334, 335, 62 So. 859, 863, again followed in Reynolds v. Woodward Iron Co., 199 Ala. 231, 235, 74 So. 360, in that respect. That case reconciled them with that of Davis v. Kornman, 141 Ala. 479, 37 So. 789, in the following manner: "We think the holding means, where evidence is shown that the ways and works of the defendant are unsafe, or insufficient, that proof that similar instruments are generally used by other prudent persons engaged in similar calling is evidence in rebuttal, and might influence the jury in holding that there was no negligence, but such proof would not, as matter of law, conclusively show that there was no negligence in the selection or use of such machinery or instrumentality." This theory is in accord with

what is said to be the most generally accepted views on that subject. 45 Corpus Juris, 706. It is also thus there expressed: "Accordingly, if the conduct pursued or the methods adopted in the particular case do not measure up to the ordinary care which would be exercised by a prudent person under the circumstances, negligence may be found to exist notwithstanding such conduct or methods were in accordance with those customarily pursued or adopted. The reason is that the usual mode of doing a particular thing may involve a lack of proper care, and usage cannot avail to establish as safe in law that which is dangerous in fact, nor may a lack of due care be excused because of the fact that carelessness is customary at the place at which, or in connection with the occupation or undertaking in which, the injury occurred. So also, the circumstances of a particular situation may be such as to call for more vigilance and caution than might ordinarily be regarded as sufficient."

"What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." Texas & P. R. Co. v. Behymer, 189 U. S. 468, 470, 23 S. Ct. 622, 623, 47 L. Ed. 905; Wabash R. Co. v. McDaniels, 107 U. S. 454, 2 S. Ct. 932, 27 L. Ed. 605.

We have no doubt of the correct statement and interpretation of the rule which was made in our original opinion in this case, and do not think we have fallen into an error, nor failed to recognize and apply the rule of our cases.

The only question of difficulty which we encounter is whether there is evidence that the appliances and structures were so placed as that they measure up to the standard of reasonable prudence, when construed in the light of all the evidence. If there were nothing to justify an inference unfavorable to appellant, except the fact of the disastrous occurrence, proof that the appliances of appellant were such as are in general use by prudently managed enterprises of the same sort, and were constructed and placed pursuant to the same standard of care and skill, would be sufficient to justify an affirmative instruction duly hypothesized. Harris v. N. C. & St. L. R. Co., 153 Ala. 139, 156, 44 So. 962, 14 L. R. A. (N. S.) 261; Lawson v. Mobile Electric Co., 204 Ala. 318, 322, 323, 85 So. 257; Louisville & Nashville R. Co. v. Marbury Lbr. Co., 132 Ala. 520, 32 So. 745, 90. Am. St. Rep. 917; Pettus v. Louisville & Nashville R. Co., 214 Ala. 187, 106 So. 807.

We thought that there was evidence from which the jury could draw the conclusion that appellant could have so placed its ground wires with reasonable expense as to lessen to a minimum the danger of lightning to its customers. That thought is challenged by the showing that south of the grounded pole, on the same side of it as that on which plaintiff's service is situated, there were customers served from each of the poles on which there could have been a grounded wire, and that at each service there is a ground connection. By that we understand that the service lines to each house are connected to a water pipe or otherwise grounded at the house so served, and that such grounded connection serves all the purposes to be expected of a ground wire on the poles. But we thought that the extracts of the testimony we copied in the opinion proved to the contrary of that contention. We cannot now discover wherein we were thus in error. If such ground connection at the end of each domestic service line served the same useful purpose as a ground on the pole, the language of the witnesses we quoted has no meaning to us. Certainly such ground connection did not save the customer from the ill effects of the lightning. It had to pass through his house wiring before it reached the ground if we correctly understand it. But if the ground connection had been in the street the chances are, as it seems to us from such evidence, more probable that it would go to ground before reaching the house. We are supported in this theory, to which no sufficient answer is made, by the circumstance that while several, maybe all the customers, situated as plaintiff was, south of the grounded pole, received the shock, whereas there is no evidence that those north of it received any at all. To us this is a circumstance that such ground did protect them from the current in its passage north, whereas there was no such protection to those south, since the stroke was apparently south of such pole. Electricity is so proverbially uncertain in its course and consequences, can any one tell what it will do? Does reasonable prudence and care for those in danger require every reasonable precaution?

It is not the province of this court to say what is the specific duty of appellant to protect its customers from lightning strokes. We cannot say that it should have done one thing or another, or have had a ground wire on every pole or not, and have no idea to what extent such requirement would add to the cost of appellant's system (the record does not show); but all we do say is that there was evidence from which the jury could draw the reasonable conclusion that reasonable and prudent precaution had not been observed in respect to this customer, notwithstanding there may be no dispute in the evidence that other such enterprises conduct their business in the same general way. That state of the evidence would justify the affirmative charge if nothing else supported a fair adverse inference.

Application for rehearing overruled.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.