This case was presented to the jury against defendants Honda Motor Company, Ltd. ("Honda"), American Honda Motor Company, Inc. ("American Honda"), and Wixom Brothers on a claim of negligent failure to warn and a claim against Wixom Brothers alone based on a violation of the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). In addition, a claim for loss of consortium was made against all defendants. The jury found in favor of all defendants on all counts. Plaintiffs, Jack Dunn and Carolyn Faye Dunn, filed a motion for a new trial, alleging that the trial court had improperly instructed the jury as to the defendants' standard of care. The trial judge denied this motion and entered judgment on the jury's verdict. Plaintiffs appealed the denial of their motion for a new trial. Defendants Honda and American Honda filed a cross-appeal, alleging that the trial court erred in not granting their motion for a directed verdict. Although we affirm the denial of defendants' directed verdict, we reverse the judgment and remand for a new trial.
On May 4, 1978, Jack Dunn, then a motorcycle police officer with the Birmingham Police Department, en route to the scene of a hit-and-run accident at the 31st Street exit off Interstate Highway 59, lost control of his motorcycle and crashed into a guard rail on Interstate 59, crushing his leg against the rail. As a result of his accident, Dunn's right leg was amputated, resulting in a 30-35% permanent impairment. *Page 1358 
Six months after the accident, Dunn prematurely retired from the Birmingham Police Department.
At the time of the accident, Dunn was riding a 1974 Honda 750cc motorcycle with a handlebar-mounted fairing manufactured by Wixom Brothers. A fairing is a device which is attached to the front of a motorcycle to deflect wind and rain away from the rider. It can be attached either to the frame of the motorcycle itself, or to the front fork or handlebars of the motorcycle.
Plaintiffs contended at trial that defendants were negligent in not warning purchasers of Honda motorcycles until 1976 that attaching a fairing to the handlebars was dangerous, even though a test Honda conducted in 1972 revealed that a handlebar-mounted fairing seriously upsets a motorcycle's aerodynamic balance, making it much more difficult to handle. At trial, defendants were allowed to introduce, over plaintiffs' objection, owner's manuals of other motorcycle manufacturers which also failed to warn of the dangers of handlebar-mounted fairings. In his instructions to the jury, the trial judge stated the defendants' standard of care as follows:
 "Now, when you are in the business of manufacturing or doing anything, then I say to you, you must not be guilty of negligence and the way that you would look at that you would say, well, what do other manufacturers doing the same type of business that the defendants are doing, what did they do or not do. That's the sort of the standard that you could apply and that's for you to decide, whether a manufacturer of a fairing or a manufacturer of Honda motor bikes or a wholesaler of motor bikes were guilty of fault in doing something that they should not have done or failing to do that which they should have done in connection with the claim or averment of failure to warn. Now, manufacturers or wholesalers or whatever you want to call them with a product which may be reasonably anticipated to be dangerous if used in a way they should reasonably foresee it would be used in are under a duty to exercise reasonable care to give reasonable and adequate warning of any dangers known to them or which in the exercise of reasonable care they should have known [and] which the user of the product obviously could not discover.
 "Reasonable care means that degree of care which a reasonably prudent person would exercise under the same or similar circumstances. If you want to transpose a reasonably prudent person, a prudent person is a careful person. So, if you want to use carelessness as a term synonymous with negligence, that's all right.
 "Now, the warning required under law need not be one that is reasonable, only needs to be one that is reasonably understandable under the circumstances and not be the best possible warning.
 "You know, I heard lawyers before described as B lawyers and C lawyers. I guess they use the same thing about judges, but let me transpose that into school. Y'all are taught, what we are saying is that if you go to school you don't have to be an A or B student, C still passes, I mean but you can't be a D or F student, so I guess the C student would be the typical or reasonable student. So, that's what we are saying. You don't have to be the best, but you can't be the worst. You have to be the best under the circumstances."
In their motion for a new trial, plaintiffs contended that the trial court erred in its instructions by setting the industry custom as the standard of care which the jury should apply to the defendants' actions, because there were reasons why Honda's competitors did not warn against handlebar-mounted fairings. In addition, plaintiffs contend that because Honda admitted at trial to being the "leader" in motorcycle technology, the trial court erred by instructing the jury that Honda's duty to warn could be likened to a "C student", i.e., that Honda should not be held to a higher standard than any other manufacturer. Stated affirmatively, plaintiffs contend that, because of Honda's claimed leadership position among motorcycle manufacturers, *Page 1359 
Honda should be required to meet a higher standard of care than other manufacturers.
The sole issue by the plaintiffs' appeal is whether the trial court erred in instructing the jury regarding the manufacturer's duty to warn. In order to answer that question, we must examine the law of Alabama as it relates to the duty of manufacturers to warn the ultimate consumer about possible dangers of the product, and, in this particular case, we are also required to examine whether the trial court's instruction on the failure-to-warn principle, if it was erroneous, was so prejudicial that the plaintiff is entitled to a new trial.
In a case similar to the one presented here, Alabama PowerCo. v. Robinson, 404 So.2d 22 (Ala. 1981), we held that the following charge by the trial court conclusively established industry standards as the duty owed by Alabama Power Company:
 "What are the duties owed in this case by these Defendants? What is the duty owed by Alabama Power Company in this case? The Alabama Power Company is under a duty to conduct and operate its electric utility business in a reasonably safe and prudent manner so as to avoid unreasonable risks and dangers to its customers and to the public. The Power Company in this case was under a duty to use and follow the various operating and engineering practices which were at the time of this accident generally recognized and accepted as safe and prudent under the same or similar circumstances by electric utility companies throughout the country. So at the time of the accident in question that was the duty owed by the Power Company." (Emphasis in original opinion.)
In an early case of The T.J. Hooper, 60 F.2d 737 (2d Cir. 1932), the court recognized that even though an entire industry follows a particular procedure, the procedure itself may be faulty and the manufacturer who follows it may be guilty of negligence. The law in Alabama, as plaintiff notes, is that customary practices or standards do not furnish a conclusive test of negligence. See, Klein v. Mr. Transmission, Inc.,294 Ala. 437, 318 So.2d 676 (1975).
The instruction in Robinson is somewhat different from the one given by the trial court here, in that the trial court here did not say that Honda was under a duty to follow the standards set by other manufacturers, but stated that industry custom was"sort of" the standard which the jury could apply to determine whether the defendants were negligent; nevertheless, we think the instruction was erroneous.
When the rejected instruction in Robinson is juxtaposed with the instant jury charge on the issue of duty to warn, it becomes apparent that as between the two, the Robinson charge may be more nearly correct. In Robinson, the jury was instructed that the defendant's duty was to be measured in relationship to "the various operating and engineering practices which were at the time of this accident generally recognized and accepted as safe and prudent under the same or similar circumstances by electric utility companies throughout the country." Citing Alabama Power Company v. Bryant, 226 Ala. 251,146 So. 602 (1933), the Robinson Court rejected this charge as "clearly [establishing] the industry standard as the duty owed [by the defendant]." Further, Robinson held "that by equating the industry standards with defendant's duty, the trial court's charge was prejudicially erroneous such that it could not be cured by other proper charges within the instruction."
Here, the jury was instructed "that the way that you would look at [defendant's duty] you would say, well, what do other manufacturers doing the same type of business that the defendants are doing, what do they do or not do"? As already noted, the industry standards referred to in the Robinson
charge were at least predicated upon industry "practices . . . generally recognized and accepted as safe and prudent." This was held as a bad charge because of its conclusiveness — a standard of duty by which the jury was bound. The instant *Page 1360 
charge is even further flawed, because it lowers the standard to "what other manufacturers . . . are doing."
The "duty to warn" charge taken from the Alabama Pattern Jury Instructions (contained in the last sentence of the first paragraph of the above-quoted portion of the trial court's instructions) is a correct statement of the law. A.P.J.I. Civil
§ 32.07. But, as the authority cited under "References" to § 32.07 indicates, proof of industry practices, though admissible for the jury's consideration in its application of the "reasonable care" standard, cannot conclusively establish the defendant's duty as a matter of law. Therefore, we do not believe this is a case where the "harmless error" rule might be applied. Because the trial court incorrectly instructed the jury, we hold that the judgment of the trial court is due to be reversed, and the cause remanded for a new trial.
 On Cross-Appeal
The defendants below, by way of cross-appeal, contend that the undisputed evidence indicates, as a matter of law, that they met any duty to warn which the law may have required. In their brief, they argue:
 "As has been exhaustively documented in the `Statement of the Facts,' every Honda motorbike sold to Plaintiff's employer, Birmingham Police Department for the years 1972-1978 contained an Operator Manual. The 1974 Manual accompanying the sale and delivery of this bike contained the following instruction:
 "`SAFE RIDING SUGGESTIONS — Handlebar fairings and luggage racks or saddlebags may adversely affect the handling of the motorcycle.'
 "Each group of bikes sold in the years 1974, 1976, 1977 and 1978 contained Defendant Exhibit 21 which is a `warning' sticker permanently affixed to the bike itself. It reads as follows:
"`WARNING: ACCESSORIES AND LOADING —
 "`The safety, stability and handling of this motorcycle may be adversely affected by the addition of accessories and cargo.
 "`Read and understand the warning contained in the Owner's Manual before installing any accessory.
 "`The weight of accessories and cargo must be added to the weight of the rider and passenger when determining if the load capacity has been exceeded.
 "`The cargo load must not exceed 60 lbs. under any circumstances.
 "`Handlebar or fork-mounted fairing is not recommended.'
 "For the bikes delivered to the Birmingham Police Department for the years 1976, 1977 and 1978, the Operator Manuals which Birmingham Police Department received contained the following:
 "`WARNING, The addition of accessories and cargo to this motorcycle can create an unsafe condition by changing the motorcycle's stability, handling characteristics and decreasing the safe operating speed. The factory cannot test each accessory in all possible combinations to make specific recommendations. The operator must be personally responsible. Be aware that extreme care must be taken when selecting and installing cargo and riding a motorcycle equipped with accessories of these general guidelines in deciding whether or how to equip a motorcycle.'
 "Further information in these Manuals contains the following:
 "`Handlebar fairings and luggage racks or saddlebags may adversely affect the handling characteristics of a motorcycle. Extra care must be taken in loading and riding motorcycles with this equipment.'"
The defendants contend that the undisputed evidence shows that the City of Birmingham would have gotten this specific information in 1976, 1977, and 1978 with each motorbike it purchased.
Moreover, say the defendants, "it is `common knowledge' in the industry and with experienced bike operators that wind *Page 1361 
can adversely affect handlebar-mounted fairings under certain conditions and it is `common sense' that you operate a motorcycle based upon the weather conditions in the area including the presence of wind."
Defendants further argue:
 "Assuming that a warning or instruction is necessary and that a duty exists to give such, the warning need only be one that is reasonable under the circumstances and need not be the best possible warning. There is no duty to warn of every potential danger but only those dangers of which the owner or user would not be aware under the particular circumstances of the product in question."
Levin v. Walter Kidde Co., Inc., 251 Md. 560, 248 A.2d 151
(1968); Martinez v. Dixie Carriers, Inc., 529 F.2d 457 (5th Cir. 1976); Restatement of Torts 2d, § 402A, Comments n and j;General Electric Corp. v. Mack, 375 So.2d 452 (Ala. 1979).
Moreover, defendants contend the duty to warn, if such does exist in the instant case, is met when those warnings were transmitted to the Birmingham Police Department, plaintiff's employer:
 "A directed verdict on this claim was proper because under Alabama law whenever a third party has a duty to warn of a dangerous condition in the workplace that duty is discharged by informing the employer of the dangerous condition — warning to each of the employer's individual employees who may be threatened by the dangerous condition then becomes the responsibility of the employer. [Emphasis supplied in defendants' brief.] Cook v. Branick Mfg., Inc., 736 F.2d 1442 (11th Cir. 1984)."
See also, Crawford Johnson Co. v. Duffner, 279 Ala. 678,189 So.2d 474 (1966); Stone v. Smith, Kline French Laboratories,Inc., 447 So.2d 1301 (Ala. 1984).
Applying the standard of review applicable when the trial court has denied a directed verdict, we are of the opinion that the trial court did not err in this regard, and that the evidence presented a jury question on the adequacy of the warning. The jury may have determined that the warning given by Honda was adequate in this case, and that may have been the reason for its verdict, and another jury may also so conclude, but we are of the opinion it does present a question for a jury to decide, as the trial court concluded; the warning was not one that the court could say was adequate as a matter of law. Consequently, the trial court's ruling challenged on the cross-appeal is due to be affirmed.
84-605 — JUDGMENT REVERSED AND THE CAUSE REMANDED.
84-663 — AFFIRMED AS TO THE ISSUE RAISED IN CROSS-APPEAL.
TORBERT, C.J., and JONES, ALMON, SHORES, BEATTY, ADAMS and STEAGALL, JJ., concur.
HOUSTON, J., recused.
 ON APPLICATION FOR REHEARING